## Mercer v. Federal Land Bank of Louisville.

June 22, 1945.

Earle M. Nichols and Gordon, Gordon & Moore for appellant.
Chas. G. Franklin for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

The appellee, Federal Land Bank of Louisville, instituted this action in the Hopkins Circuit Court against Dow Mercer seeking cancellation of a sales contract to certain land sold the appellant, and a writ of possession therefor, and further asking that the initial payment made by the defendant below be treated as rent for the use of the land and/or liquidated damages for breach of the contract. From an adverse judgment rendered therein, the appellant is prosecuting this appeal.

By deed, bearing date October 23, 1942, the land involved herein was conveyed to the appellee by the Master Commissioner of the Hopkins Circuit Court pursuant to judgment obtained by the appellee Bank as plaintiff against Clyde Herring et al., defendants, wherein the Bank had foreclosed a mortgage lien upon the land. Shortly afterwards, an agent of the Bank, engaged in selling real estate for it, showed this land to the appellant, his wife, daughter and son, for the purpose of selling same. On December 3, 1942, the appellant, on a form prepared by the Bank, executed and delivered to it a written offer to purchase this land upon the terms and conditions set out therein, which offer the Bank accepted on December 10, 1942. By this instrument the Bank contracted to convey to Mercer "a farm known as the Clyde Herring farm—containing 582 acres more or less." The pertinent provisions of this contract about which this litigation arose are as follows: "(1) Mercer agreed to pay $8,500.00 for the land, $850.00 of which he was to pay in cash on the signing of the contract; (2) the Bank contracted to deliver a deed to Mercer on March 1, 1943, upon delivery of which Mercer was then to pay an additional sum of $850.00, and to execute a mortgage for the balance of the purchase price; (3) the Bank was to deliver to Mercer possession of the premises not later than upon acceptance of the contract, subject to tenant's rights for 1942; (4) if Mercer failed to comply with the terms of the agreement, the Bank might cancel it without notice and re-possess the premises, 'in which event all payments made by the offeror upon this contract shall be deemed rental for the use of said property and/or liquidated damages.' "

On the date of the acceptance of the contract, Mercer made his first payment. On or about March 1, 1943, the Bank tendered Mercer a deed to the land, which Mercer contended did not convey to him all the land in the Herring farm which the Bank owned and Mercer had purchased. Mercer had been further complaining that under the contract he was to have possession at the date of the acceptance of the contract; that the Bank did not attempt to deliver possession to him at that time; that it made no attempt to evict Herring and deliver possession to Mercer until sometime in January, 1943, and that it did not notify Mercer that he might have possession until on or about February 1, 1943. and then did not deliver possession of all of the land, and had not delivered all of it to him even at the time the Bank filed its petition herein, or at the time of the trial. He had further complained that at the time he was first shown the Herring tract of land, the agent for the Bank, a Mr. Short, had represented to him that a 12 or 13 acre tract of land known herein as the millsite tract, which afterwards was learned did not belong to the Bank, was pointed out to him as being a part of the land proposed to be sold. Because of this shortage, and because the Bank had not delivered possession of all the land of which it could deliver possession, Mercer refused to accept the deed and refused to pay the Bank the second payment. It is claimed that at that time Mercer informed a Mr. Melton, representative of the Bank, of the shortage and failure to deliver possession. The Bank continued to demand payment, which was refused, and in November 1943, filed this action. Certain demurrers were filed which were overruled. The matter was tried and a judgment rendered in favor of the Bank.

The grounds upon which Mercer seeks a reversal are: (1) The petition was demurrable on two points and the demurrer should have been sustained; (2) the Bank itself was in default in failing to deliver possession of all the land to Mercer and in failing to tender a proper deed; (3) the Bank has waived any default of Mercer; (4) the alleged inability of Mercer to pay the second installment is not ground for cancellation; (5) the Bank has no right to retain payments made as liquidated damages; (6) the evidence is not of such character as to warrant cancellation; and (7) the judgment for liqui-

dated damages exceeds the amount prayed for in the petition and the amount of the proved damages.

At this point we are confronted with a motion of the appellee, made pursuant to sections 757 and 758 of the Civil Code of Practice, to dismiss the appeal for the reason that appellant has no right of appeal, since by his own voluntary acts he has estopped himself from prosecuting an appeal from the correctness of the judgment rendered against him. The motion is predicated on the fact that the appellant entered into a lease contract after the judgment was rendered and before the appeal was taken, whereby at the appellant's instance and request, he leased the farm involved from the appellee for the year ending December 31, 1944, thereby recognizing the validity of the judgment. In support of its motion, the Bank filed a copy of the lease and affidavit of R. V. Robinson, an employee of the Bank. Response and reply to the above motion was filed by appellant, supported by affidavit in which Mercer stated that pursuant to the judgment of the court, he would be evicted from the farm by writ of possession to be issued on or after July 15, 1944; that in the Spring before the judgment was rendered, he and his son, Thomas Mercer—Thomas being the only one of three sons at home (the other two being in the armed services)—had planted 30 acres of corn, 4/10 acre of burley tobacco; that he had leased 90 acres of corn land to a tenant who had that acreage of corn planted and growing; that he had 50 head of hogs, 16 head of cattle and 8 horses; that at the time the judgment was rendered, he was faced with a loss of all of his growing crops if he could not execute a supersedeas bond; that he made effort to execute supersedeas bond, but that he was unable so to do, and that the only reason he entered into the lease contract was because he was unable to execute the necessary supersedeas bond to prevent eviction, and that he had no other farm or place to which he could move his livestock and family at that time of the year.

Supplemental motion was filed by appellee supported by affidavits to which appellant filed a response supported by affidavits.

The appellant takes the position that when the judgment was rendered by the trial court, there were only

three possible courses open to him, namely: (1) He could supersede the judgment, (2) he could fail to supersede and be evicted from the land, or (3) he could enter into the lease contract, remain on the land for the remainder of the crop year and thus save at least 2/3 of his crop.

The challenging question to be decided here is whether or not the appellant by entering into the lease contract waived his right, and is thereby estopped from prosecuting this appeal. In support of its position the appellee cites Am. Jur. C. J. S. and numerous cases, all of which are discussed by appellant in his brief, and none of which are immediately in point nor support entirely the Bank's contention. In reading the text cited by appellee, it may be stated that in both American Jurisprudence and C. J. S. the rule as laid down by appellee in his brief was merely a general rule, but further along in the text the matter of exceptions to the rule is discussed. We are in no way complaining with the position of the appellee herein in that where the validity of a judgment is recognized, and some benefit is derived therefrom by such recognition or action upon the judgment, then, certainly, there would be a waiving of the right. However, there can be no disputation that the right of appeal is favored by the law, and it certainly should not, and will not, be held to have been waived except upon clear and decisive grounds. The entering into the lease contract appears to have been a protective act and the only alternative for the appellant in view of the fact that he was unable to execute a supersedeas bond. It seems to be the better view according to most jurisdictions, which also seems to be the rule in this jurisdiction, that the right to appeal from a judgment is not waived even by the voluntary payment of the amount into court.

In Madden v. Madden, 169 Ky. 367, 183 S. W. 931, L. R. A. 1916 E. 892, the court said:

"Where judgment is rendered against a party for money, he may pay the judgment and still prosecute the appeal; payment in such case being in lieu of his right to supersede the judgment as provided by Civ. Code Prac., sec. 747, * * *."

It cannot be said that the appellant herein voluntarily acquiesced in, ratified or recognized the validity of the judgment by entering into the lease, nor can it be plausibly claimed that by his so entering into the lease contract, he pursued clearly and unmistakably an inconsistent course of conduct which could be relied upon as a waiver or estoppel on the grounds of voluntary and absolute acquiescence. See Voss, Sr., et al. v. Stortz et al., 177 Ky. 541, 197 S. W. 964; Todd's Ex'r et al v. First National Bank et al., 173 Ky. 60, 190 S. W. 468. There can be no serious argument with the position that in order to create an estoppel, the party pleading it must have been misled to his injury. He must have parted with some available right and suffered some injury or have been induced to alter his position for the worse in some material respect. In dealing with this question in 63 A. L. R. page 496, we find these words:

"There must be a clearly expressed intention of the appellant to abandon his appeal. The waiver of the right must be intentional. It cannot be waived by one who, as a result of a mistake or ignorance, attempts to pursue the wrong remedy."

In the case of James v. James, 55 S. W. 193, 21 Ky. Law Rep. 1401, the plaintiff therein sued to recover on a mortgage note, and to foreclose a lien. Plaintiff was awarded judgment and the property was sold and purchased by plaintiff. Afterwards, and before appeal, the defendant occupied the property by some arrangement with the plaintiff, and then appealed. The appellee contended that the appellant by occupying the property by agreement with the plaintiff thereby recognized the plaintiff's title, and was barred in her right to appeal. The court said:

"It is also urged that appellant lost her right to appeal by acquiescing in the association's purchase of the property, and holding under it after the sale, without then praying an appeal. The statute gives her the right of appeal for two years after the judgment complained of was rendered. Her right to complain that more was collected from her than she in fact owed was not affected by her holding the property under the association after its purchase at the judical sale had been confirmed, and its title consummated. So far as the property was concerned, her title to it was gone,

and she had the same right to contract with the association in regard to it as anyone else, and afterwards, within the time allowed by law, to take an appeal from the judgment of sale, if, under it, a greater lien was adjudged against her property than in fact existed.''

As noted above, the appellant was in a rather desperate situation. Having failed in procuring surety for supersedeas bond in Hopkins County, he had gone to Breckenridge County, his former home, and there failed to make provisions for the supersedeas bond. While there, and without the advice of attorney, in his desperation he contacted an agent of the Bank through whom he had purchased the farm. It was during that conversation that apparently the idea or thought of lease was promoted.

It appears to us that his entering into the lease was nothing more nor less than a protective measure entered into in lieu of the supersedeas bond. In view of all the above we are constrained to the belief that the motion should be and is hereby overruled.

This brings us to a consideration of the questions raised by appellant in his brief on the appeal. The appellant filed a general demurrer to the petition which was overruled by the court below. Appellant insists that the demurrer should have been sustained because of the insufficiency of the allegations of the petition. The Bank specifically alleged that the contract was made a part of the petition and further alleged that Mercer had failed to carry out any of the provisions of the contract except the initial payment of $850. It further alleges that the plaintiff had offered to carry out all of the terms and conditions of the sales contract but that the defendant has failed and refused, and still fails and refuses to carry out the terms and conditions thereof, and fails and refuses to deliver back to the plaintiff possession of the premises although possession has been demanded. It appears that these allegations are the only ones in the petition which charge a breach on the part of Mercer, or a compliance on the part of the Bank. It appears to be very little more than a mere pitching in to the suit the sales contract and saying to the court that ''we have carried out our part of the contract and the defendant has breached the contract, therefore, we want the contract cancelled and the defendant ejected.'' In

the case of Estes v. Gatliff, 291 Ky. 93, 163 S. W. 2d 273, 276, the court said:

"The plaintiff's allegation that he had complied fully with all the terms of the contract is a conclusion of the pleader and not sufficient as an affirmative allegation that he had paid the rents."

See also Thompson v. Edwards, 220 Ky. 239, 294 S. W. 1095.

A mere allegation that the Bank had offered to carry out all the terms and conditions of the contract, and that Mercer had failed and refused to perform his obligation, does not state facts sufficient from which the court could determine whether the Bank had done the necessary things before Mercer was obligated to make payment of the second installment. It is rather obvious that this petition was not good on demurrer, and the demurrer should have been sustained. It is, therefore, not necessary to discuss the contention that the Bank is not entitled to the relief sought other than to say it is well taken, except that this court has consistently ruled that where the initial payment is in line with a reasonable rental, then the procedure adopted by the Bank will be sustained. It cannot be seriously contended that the $850 would be an exorbitant and unreasonable cash rental for the farm.

Despite the fact that the above is sufficient to reverse the judgment herein, we shall pursue the matter further and consider the added contention that the Bank is not entitled to the relief sought in that it has never tendered Mercer a proper deed for the land sold to him.

The first inescapable fact presenting itself in considering this point is the provision in the contract of sale wherein it was provided for the payment of $850 cash; $850 to be paid on delivery of deed, which was to be on March 1, 1943. Mercer was required to make the first payment of $850 when the contract was accepted by the Bank. This was done. It became the duty of the Bank, then, to put the purchaser in full and complete possession of the premises, which under this evidence was not done. Even though that had been done, it then became the duty of the vendor on March 1, 1943, to execute and deliver to the purchaser, or at least to tender him, a deed conveying to him all of the real es-

tate covered by the contract of sale, which the Bank owned and could convey to him, upon delivery and tender of which it would then become the duty of Mercer to make the second payment of $850. Certainly it cannot be plausibly argued that the tender of any sort of deed would be sufficient. The vendor would necessarily be required to tender a proper deed, and under the provisions of the contract, to deliver the deed before the second payment. It would follow that a tender of a proper deed by the vendor is necessary to put the purchaser in default. See Johnson v. Benjamin, 219 Ky. 169, 291 S. W. 801. In 66 C. J., Vendor and Purchaser, Section 240, the general rule is stated as follows:

"Conveyance is a condition precedent to payment where the contract provides that the conveyance is to be made on a day prior to that appointed for payment, or that it is to be made on a certain date, and that payment is to be made when or as soon as the conveyance is executed."

Herring first mortgaged this land to the Bank, in which there is excepted from the land covered by it, what is known as the "millsite tract," the last call in the description of which reads as follows: "* * * thence with said right of way south 32 west 30 poles to the beginning."

The Commissioner's deed to the Bank on October 23, 1942, conveyed to the Bank all of the land described in the mortgage from Herring to the Bank and excepts from the conveyance the millsite tract by the exact description of the excepted tract contained in the mortgage from Herring to the Bank.

In the deed claimed to have been tendered Mercer by the Bank, there is excepted a tract stated therein to contain 13 acres "which is the millsite tract." The last call in the description of the excepted tract reads: "* * * thence with said right of way south 32 degrees west 36 poles to the beginning." This is 6 poles longer than in the deed from the Commissioner to the Bank. Obviously, the Bank did not tender Mercer a deed to all of the land to which it acquired title in the foreclosure proceeding. In his opinion the Chancellor said:

"The Bank did tender a deed which was evidently not sufficient because it gave one line too long and would

not convey about 3½ acres the defendant had contracted to get."

The guiding principle, therefore, is the obligation and duty of the Bank to tender a proper deed before it became Mercer's duty and obligation to pay the second installment. Being in default in this respect, it cannot obtain cancellation. See Breckinridge County v. Beard, 233 Ky. 823, 27 S. W. 2d 427; Cawthon v. Jones, 240 Ky. 380, 42 S. W. 2d 498; Johnson v. Stumbo, 277 Ky. 301, 126 S. W. 2d 165; Kuntz v. Peters, 286 Ky. 227, 150 S. W. 2d 665.

Since it was clearly the duty of the Bank to tender Mercer a proper deed before he was obligated to pay the second installment, we cannot conclude otherwise than that Mercer cannot be held in default until the Bank tenders a proper deed.

Wherefore, the judgment of the lower court is reversed and the cause remanded for proceedings consistent herewith.