Wayne E. COOK and Shirley J. Cook,
Appellants (Defendants below),

v.

S. W. MOYLE and Edna K. Moyle, Appellees
(Plaintiffs below).

No. 2950.

Supreme Court of Wyoming.

Feb. 7, 1961.

Lynn Rees, Laramie, for appellant.

No appearance on appeal for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Plaintiffs seek restitution of possession, recovery of damages for loss of rents and other relief pertaining to a house and tract of land in Laramie, Wyoming. Defendants were in possession of such property under a real estate sales contract dated March 5, 1954 between plaintiffs as sellers and the defendants as buyers. According to the written agreement of the parties, the total purchase price for said property was $4,700; the cash down payment was $600; and the remaining balance was to be paid in monthly installments of $75 each. In addition to these payments, buyers agreed to pay taxes and keep the buildings insured. Among other things, the contract provided:

"* * * The seller specifically agrees with the buyer:

"(1) To furnish the Buyer a good and sufficient abstract of title showing merchantable title of record in said premises above described in said Seller. * * *

"(2) To escrow in First National Bank at Laramie, Wyoming, a warranty deed and abstract of title, subject to the agreement hereinafter made by the Seller for the delivery of such deed and abstract.

"(3) To deliver possession of above described property to said Buyer upon

execution of this contract, subject to the agreements hereinafter made by Buyer."

It was recited in the contract that there was a mortgage on the property in the approximate amount of $3,200, and that sellers would pay it off from monthly payments made by the buyers. The written escrow instructions to the bank, signed by all of the parties, listed the items being placed in escrow, including the warranty deed, with a notation reading: "Abstract, Fire insurance etc., with the miscellaneous papers on file in the office of the Nebraska Central Building & Loan Assn. of Lincoln Nebraska." The warranty deed with other items for escrow, not including the abstract, were sent to the bank by S. W. Moyle with a transmittal letter containing this paragraph:

"When the mortgage has been paid off by S. Moyle to the Neb. Cent. Bldg. & Loan Assn. the abstract of Title and Insurance will be placed in escrow with other papers at the 1st Nat'l in Laramie, Wyoming."

A copy of Moyle's letter was mailed to Wayne Cook. It does not appear that either of the buyers at that time demanded the abstract or registered a title objection. At the trial Mr. Moyle was asked whether he had advised Mr. Cook that he had a right to have the abstract examined by an attorney, and he answered that he · did. Mr. Cook was also asked if he had been so advised. He replied that he didn't know and then added, "I think that there was a slip given to me at the time I signed the contract saying that it had been examined and was clear." On November 29, 1956, after sellers had paid off the mortgage, the abstract was then deposited in escrow.

The last payment made by defendants was on January 31, 1957. It represented the payment due January 25, 1957. At that time the records of the bank indicated the balance owing, after credit for said payment, was $2085.57. Up to that time the monthly payments had been made somewhat irregularly. When payments were not made on February 25 nor on March 25, 1957, plaintiffs had their attorney, Alfred M. Pence, take action. On April 3, 1957, he sent a registered letter to Wayne E. Cook, one of the buyers, notifying him that his contract was in default; that buyers were exercising their rights for termination of the contract and the re-delivery of the escrow papers to them from the bank; also that all payments made would be declared forfeited in lieu of rent and for liquidated damages. Provisions for such forfeiture in case of default were contained in the contract.

According to defendants, they then made arrangements for a loan of $2,550 with the Albany Mutual Building Association. This loan was approved April 25, 1957. At that time an officer of said firm obtained the abstract from the bank and had it extended to date. It was then referred to attorney J. R. Sullivan for a title opinion. Because the abstract showed that a suit filed June 28, 1956 was still pending, in which the sellers were defendants, Mr. Sullivan, by letter dated May 13, 1957, reported that if judgment were rendered against said defendants during the existing term of court, it would become a lien upon their property, retroactive to the first day of said term, March 8, 1957. He recommended that the loan should not be granted until the matter was cleared up in some way.

On account of this title objection the loan was not made, and apparently sellers took the position that they had already cancelled the contract by the notice of April 3, 1957. They claimed buyers were tenants and responsible to them for rents from and after the date of said notice. At the trial Mr. Moyle testified that he had a conversation following such notice with Mr. Elmer Redburn, an officer of Albany Mutual Building Association. He related that Redburn had informed him that Cook would like to pay off. To this he replied, "I told him that so far as I was concerned he was in default, he had lost the place, and if there was anything further to be done he would have to see my attorney."

On at least one occasion, Mr. Moyle claimed, he wrote to Mr. Cook and asked when he could expect rent. Concerning the papers in escrow at the bank, he was asked whether they had been picked up at the time of his conversation with Mr. Redburn. His answer was, "Mr. Pence had been instructed, and so far as I knew they had been picked up, and to the best of my knowledge that is the reason Mr. Redburn called, the papers had been picked up. He mentioned that I had asked for a forfeiture of the contract." Actually, however, Mr. Pence did not pick up the papers at the bank until February 19, 1958, about ten months later.

Mr. Rees, attorney for defendants, questioned Mr. Moyle on cross-examination, and the following testimony ensued:

"Q. Do you recall telling Mr. Redburn that you had no objection to Mr. Cook paying off the contract in full at that time? A. I did not make any such statement.

"Q. You certainly have talked to me about it in the last year have you not? A. And you will have to admit that I never told you once that I would ever release that contract.

"Q. That you never would what? A. Release it or take payment of it.

"Q. I agree on that, but I also made offers to pay the contract off on behalf of Mr. Cook. A. This property was lost. They were apparently were trying to get a loan from the Building And Loan after the property was lost.

"Q. And I did convey an offer to you though from Mr. Cook, didn't I? A. You offered to pay off, as I recall, the amount that was due on that contract, and that they could get a loan now and pay it. I don't recall any specific amount. I do not know how much was due on the contract at that time."

\* \* \* \* \* \*

"Q. Now, Mr. Moyle, before you filed the lawsuit in question here which was filed in January of this year, did you make a tender of a Warranty Deed to the premises described in the case in question, and also a tender of the Abstract of Title brought up to date at that time prior to filing this suit? A. Prior to the filing of this suit the property had been repossessed. The deed was in escrow. The abstract was in escrow."

Mrs. Moyle testified that about February of 1958 she called Mrs. Cook and asked whether they were going to pay rent, or what they were going to do about the property. Mr. Cook testified that he was ready, willing and able to pay off the contract and had been so inclined since he made his application to the Albany Mutual Building Association and up to the present time. Several times in their answer and cross-complaint defendants repeated that they have stood ready, willing and able to pay the principal balance and all that is owing under the purchase agreement.

On April 25, 1958, a year after plaintiffs claim to have cancelled their contract, and two months after their attorney had picked up the papers from escrow, a favorable judgment was entered in the suit pending against them, which meant the title objection was then removed. Following that, on May 22, 1958, Mr. Pence as attorney for sellers caused a notice to quit premises to be served on both of the Cooks. It was the statutory form of three day notice to quit premises which precedes forcible entry and detainer actions. It did not refer to the real estate contract in any manner or purport to be in compliance with any of its terms.

Suit in the case at bar was commenced January 2, 1959, and on August 10, 1959 judgment was entered in favor of plaintiffs for restitution of the premises; for damages in the amount of $750 as rent from April 25, 1958 to July 25, 1959; for further rent at $50 per month from July 25, 1959 to the date of restitution; for an attorney's fee of $100 and costs of $9. The defendants were given credit, however, for $900 for improvements placed on the property by them.

From this judgment the defendants have appealed, filing in this court a record on appeal and brief. The plaintiffs did not file a brief or appear in the appeal.

The obligation of sellers to furnish an abstract of title showing merchantable title of record and their obligation to escrow such abstract are crystal clear. These provisions are just as binding and imperative as the obligations of buyers to make payments. Even though buyers may have acquiesced in the arrangement for the abstract to remain temporarily with Nebraska Central Building and Loan Association and to postpone its extension for the purpose of showing merchantable title, it does not mean that the ultimate requirement in that regard was waived. Sellers did escrow the abstract November 29, 1956. However, according to the testimony, it was not extended to date and could not have shown a merchantable title. If it had been extended, it would have reflected the title defect subsequently pointed out by Mr. Sullivan, for the suit against sellers had been started June 28, 1956.

It was not until the building and loan officer obtained the abstract from the bank and had it extended to April 25, 1957 that said abstract could be said to reflect either a merchantable title or a lack of such title. It did in fact reflect at that time a lack of merchantable title. The objectionable defect in title was not removed until April 25, 1958, when the suit against sellers was concluded. The fact that the district court recognized this situation is reflected in the fact that it used that date for the commencement of rents.

At all times from June 28, 1956 to April 25, 1958 sellers were in default by reason of the fact that they had not and could not furnish an abstract of title showing merchantable title. Therefore, when they attempted to cancel the contract by reason of defaults on the part of buyers, as of April 3, 1957, they were not in a position to do so. At that particular time, not only was the title defective but the abstract had not been extended to show title of any kind. Apparently the loan of Nebraska Central Building and Loan Association had been made to previous owners, Everett J. Harnden and Ruth J. Harnden, and the abstract prior to the extension of April 25, 1957 revealed nothing but title in them.

As we have already pointed out, defendants claim, and there is nothing in the testimony or records of the case to dispute such claim, that they have stood ready and able since April 25, 1957 to pay the entire balance of the purchase price and whatever is owing on the contract, upon delivery of a warranty deed and a merchantable title. Plaintiffs on the other hand, as indicated by the testimony set out above, have stood adamant in the position that they cancelled the contract as of April 3, 1957; that they would not accept payment of the balance on the purchase price; and that they expected the payment of rent. In their complaint, demand for rents from that date was still made.

This court has previously taken the position, in the case of Baker v. Jones, 69 Wyo. 314, 240 P.2d 1165, that a seller cannot legally declare a forfeiture of a contract for the sale of land after his own default without first giving the buyer notice of his intention so to do, and additionally giving him a reasonable time within which to perform and make payment. It follows as a matter of course that such notice and time for performance must come after seller has corrected his own default.

In the case of Linch v. Game & Fish Commission, 124 Colo. 79, 234 P.2d 611, 614, there was a contract for the sale and purchase of realty containing an agreement by vendor to deliver good and sufficient assignments of leases on state lands. Vendor failed to deliver good assignments and instead tendered ones which were defective. The purchaser refused to make payment until proper assignments were delivered, and the court had under consideration the question as to whether such vendor could claim a forfeiture for non-payment. It answered in the negative saying, "A vendor in default for failing to furnish

a good title may not terminate the rights of the purchaser. Price v. Immel, 48 Colo. 163, 109 P. 941." Then it quoted the following language now found in 91 C.J.S. Vendor and Purchaser § 136, p. 1072 (1955): "To entitle the vendor to avoid the contract he himself must not be in default. So, too, he is not entitled to rescind or forfeit the contract for a default of the purchaser unless he is able to perform in accordance with the terms of the contract." For other cases to the same effect see Kilpatrick v. Smith, 236 Iowa 584, 19 N.W.2d 699; Mercer v. Federal Land Bank of Louisville, 300 Ky. 311, 188 S.W. 2d 489; Scobey v. Swartz, 176 Or. 654, 160 P.2d 280.

In Fulton v. Chase, 240 Iowa 771, 37 N. W.2d 920, an attempted forfeiture of contract for the sale of realty by vendor was held to be ineffective for the reason that the vendor had given a warranty deed to a third person, and he was therefore in default by virtue of having placed the legal title beyond his control.

In the case at bar, Moyle's own default was not corrected until April 25, 1958. The Cooks, as far as the evidence shows, have stood ready since a full year before that time to perform all of their obligations upon receipt of a warranty deed and merchantable title. We cannot assume they will fail to do so. At least, it seems clear that the Albany Mutual Building Association stood ready as of April 25, 1957 to furnish a loan which would have made such performance possible.

■ Inasmuch as sellers failed to provide an opportunity for performance by buyers, after seller's default was remedied, the trial court should have fixed and allowed a reasonable time for such performance on the part of buyers For its failure so to do, we feel it incumbent upon us to reverse its decision and to remand the cause for proceedings consistent with this opinion.

Reversed and remanded.