## BAKER v. MAGGARD et al.

Court of Appeals of Kentucky.
Feb. 13, 1953.

46

Cornett & Dixon, Hyden, for appellant.
Issaac Turner, Hyden, for appellees.

MOREMEN, Justice.

This appeal is from a judgment establishing a public passway over land belonging to appellant, Wilson C. Baker.

On December 27, 1949, appellant filed suit to enjoin alleged unlawful trespass by the appellees, Cova Maggard and Jimmie Maggard, across land belonging to him. Appellees, by answer, pleaded prescriptive right to use the passway in question. The circuit court denied the permanent injunction requested by appellant and adjudged that appellees, and the public generally, had a 16-foot public passway across land belonging to appellant.

The Jim Baker farm through which the disputed passway runs is bound on the west by the Beech Bottom Branch, on the east by Maggard's Branch and on the south by Cutshin Creek. A rural highway follows the north branch of Cutshin Creek the length of the farm. Several paths and old roads cross appellant's farm, but we shall describe only those necessary to an understanding of the issue involved.

An old road follows Maggard's Branch northeast approximately 800 feet from the rural highway, and then turns northwest and continues about 300 feet to a point slightly north of the Baker residence. In 1936, Clarence Woods, a logger, obtained permission from appellant's father (from whom appellant received title to this land) to construct, from that point, a haulway west through an enclosed field and certain unfenced ground to a road which parallels Beech Bottom Branch. This latter road which connects with the rural highway, above mentioned, is known in the evidence simply as "old road."

Woods improved the Maggard Branch Road to the point above described. He then built a completely new road across the enclosed field. It was necessary to cut the fence on the easterly and westerly sides. The westerly fence is known as "old fence," and it was replaced by a fence located a short distance to the east which is called "new fence." A path or trail existed west of the old fence and Woods widened this path to 16 feet and graded it so as to make it passable for vehicles. This portion of the passway in question had been used by pedestrians and equestrians for a good number of years. However, it was not until after Clarence Woods widened and improved this portion of the passway was it suitable for vehicular travel.

Appellant concedes public domination of that portion of the road which lies west of the new fence to the extent that it has been used by persons walking or riding on horseback, but insists that the public's prescriptive use is confined to the limits of its use during the prescriptive period and that the path which has been widened to 16 feet may not be used for vehicular travel.

In Ben Snyder, Inc., v. Phoenix Amusement Co., 309 Ky. 523, 218 S.W.2d 62, we held that a right of easement obtained by prescription means a right according to the nature of the use to be made of the easement and, in Lyle v. Holman, Ky., 238 S.W. 2d 157, 159, we said:

"When acquired by prescription it may be conditional and restricted according to the use and purpose of its enjoyment during the prescriptive period. It will not ripen into a greater

estate after the period of limitation has passed. The right is crystallized as to form during the waiting period and is of the nature of the use during that period. This does not mean that the owner of the right to the easement has the right to the absolute enjoyment of the privilege during every moment to the exclusion of all others. The quality of an easement presupposes two distinct tenements, the dominant to which the right belongs and the servient upon which the easement is imposed. But the dominant is carved out of the servient estate only to the extent of and according to the nature of the use during the prescriptive period."

We are of opinion that appellant's contention is correct.

We believe that appellant's contention concerning the remaining portion of the road is also correct. This is the portion of the road which was cut through the enclosed field in 1936. (Remember—this suit was filed in 1949). The evidence discloses that the use of this part of the road was not only during a shorter period than is required, but was also permissive in nature. In fact, gates at each end of the road were kept locked.

Appellant testified that occasionally he would unlock the gates and permit some persons to haul lumber on the road, but each time his permission was required. One of the appellees, while testifying about the incident which precipitated this lawsuit, made these admissions:

"Q. How did you get through? A. Well, one was nailed up and there was a tide in the branch so I came around there and opened the gate and went through and went down and closed the other one and went through.

"Q. How did you get through? A. I went through.

"Q. Forced the jeep through? A. I went down there and it was locked.

"Q. You tore it down with your —? A. I tried to turn and I had a small place to turn in, after I got turned I came up there and it was nailed and I had been through a branch, and I came on back through.

"Q. Drove the jeep through the gate? A. My jeep just wouldn't hold, it came on back through.

\* \* \* \* \* \*

"Q. After the gate was torn down, did Wilson Baker ask you why you didn't come and get the key? A. Yes, sir.

"Q. What did you tell him? A. I told him I didn't want to wake him up that soon." (The gate which appellee admits tearing down joins the fence near appellant's home.)

■■ This leaves for determination the question of whether appellees and other inhabitants of this community are entitled to a way of necessity across Baker's land. We think appellees failed to establish that they were landlocked. It was shown that the road known as "old road," which parallels Beech Bottom Branch, was in existence. It is true that this road is in a bad state of repair and perhaps, at times, during high water, impossible of travel. But the poor quality of an existing road may not be made the basis of a claim for a road of necessity across the land of another.

■ A way of necessity may be established, as in the case of other easements, where a passway has been used for a period of 15 years. Stipp v. Sleggins, 46 S.W. 205, 20 Ky.Law Rep. 353. It may also be established by express or implied contract, as explained in Marrs v. Ratliff, 278 Ky. 164, 128 S.W.2d 604, 609, where the court quotes with approval from 21 R.C.L., section 10, page 1214, the following language:

"'A way from necessity is an easement founded on an implied grant or reservation and is an application of the principle that wherever one party conveys property, he also conveys whatever is necessary to the beneficial use of that property and retains whatever is necessary to the beneficial use of land he still possesses; but it must be a way of strict necessity; mere convenience will not do.'"

Statutory law also provides a method of establishing an easement of necessity. KRS 381.580.

Appellees have failed to establish ownership or right by any of the above means.

The judgment is therefore reversed with directions that upon return to the circuit court, judgment be entered in accordance with this opinion.