**Elva Skidmore FARMER and Roy Farmer, her husband, Movants,**

v.

**KENTUCKY UTILITIES COMPANY, Respondent.**

Supreme Court of Kentucky.

Dec. 14, 1982.

James S. Greene, Jr., Harlan, for movants.

Rice & Huff, Harlan, Leslie W. Morris, II, Stoll, Keenon & Park, Lexington, for respondent.

**580**

STERNBERG, Justice.

In 1978, Elva Skidmore Farmer, one of the movants, acquired a small tract of land from her mother. In 1923, 55 years prior to the purchase of this property by movant, the respondent, Kentucky Utilities Company, constructed a transmission line which overhangs a portion of this property. The wires are attached to two poles which, themselves, are located on lands adjacent to the subject property but not on it. Since 1976, the premises have been unoccupied. In 1966, Kentucky Utilities Company entered upon this property and cleared out the undergrowth under the wires. The owner filed suit against the utility company claiming that the chemical spray used in clearing the undergrowth had killed some of the lettuce in their garden, killed a grapevine, killed some trees, and had adversely affected the soil. This suit was settled for $700.

In 1980, Kentucky Utilities Company determined that the area beneath the wires again needed to be cleared. It, thereupon, engaged the services of a tree, shrub, and undergrowth removal company who entered upon the subject premises, with men and equipment, and cut and removed trees and other growth of vegetation from beneath the wires and in close proximity thereto. The owners of the land filed a suit against the utility company charging trespass and sought damages by reason thereof.

This case was tried to the court without the intervention of a jury. The trial court assessed the issue as follows:

> "(T)he real question here is the secondary easements or the easements that flow from the main easement, and the Defendant has taken the position that once it establishes its main prescriptive easement, that automatically there are secondary easements that flow from that, including the right to go on the property, the right to maintain the property within a reasonable width which they've shown by proof to be fifty (50) feet on either side of the center line...."

The trial court found that the Kentucky Utilities Company had a prescriptive easement as to the overhanging wires, but did not have any right to enter upon the land over which the wires were hung for the purpose of clearing. The Court of Appeals held that the prescriptive easement to hang lines necessarily includes as an incident thereof a right to enter the property underneath the lines for purposes of maintenance and repairs. This court, on June 29, 1982, granted review.

All counsel agree that the subject issue is one of first impression to this court. Even so, the general principle is so well recognized that it has been enforced in this jurisdiction for decades. The use of the land beneath the overhanging lines is as stated by the trial judge, a secondary easement necessary for the enjoyment of the principal easement. It is ancient law that nothing passes under an easement but what is necessary for its reasonable use and proper enjoyment. *City of Williamstown v. Ruby,* Ky., 336 S.W.2d 544 (1960). The use of the easement must be as reasonable and as little burdensome to the landowner as the nature and purpose of the easement will permit. *Horky v. Kentucky Utilities Company,* Ky., 336 S.W.2d 588 (1960). In *Higdon v. Kentucky Gas Transmission Corporation,* Ky., 448 S.W.2d 655 (1970), this court was constrained to the view that dominant and servient owners have correlative rights and duties which neither may unreasonably exercise to the injury of the other. In *Downey v. Urton,* 10 Ky. Opinions 143 (1878), the court wrote that "if there is a passway over a man's land which his neighbor has used, not by his permission merely but under a claim of right for more than twenty years, then such neighbor has a right to continue to use the passway, and it becomes unlawful to obstruct it or hinder his use of it."

It would appear that the Kentucky Utilities Company could not use the primary easement for overhanging wires to the unreasonable detriment of the movants. Conversely, it would appear that the movants cannot use the servient estate to the detriment of the Kentucky Utilities Company. By using the servient estate so as to permit trees, shrubs, and other growth and

vegetation to grow to heights as to interfere with the proper enjoyment of the primary easement, the movants inhibited the proper use of the overhanging wire easement.

Insofar as the use of the secondary easement is concerned, this court is of the opinion that the owner of an easement acquired by personal negotiations, by eminent domain, by prescription, or otherwise, for the erection of electric wires may enter upon the premises over which the wires are constructed for the purpose of removing vegetation, or other growth or substance, that interferes with the natural and reasonable use of the easement for the purpose to which the land accommodated by the easement may be naturally and reasonably devoted. It is evident, however, that the Kentucky Utilities Company is limited in the manner and extent of its usage of the servient estate in that only so much thereof may be encroached upon as is necessary to the natural and reasonable use of its primary easement. To this extent, therefore, there is a factual issue to be determined by the factfinder.

We affirm so much of the decision of the Court of Appeals as holds that the Kentucky Utilities Company, by reason of its primary easement, has a right to enter upon the servient property beneath the lines and in the immediate vicinity thereof for the purpose of repairs and maintenance. However, we reverse and remand to the Harlan Circuit Court for a new trial on the issue of whether the Kentucky Utilities Company, in entering upon the servient estate, cut such trees, shrubs, and undergrowth as were necessary for the proper and natural and reasonable use of the primary easement or, if not, to respond in damages.

All concur except AKER, J., who dissents and files herewith a dissenting opinion.

AKER, Justice, dissenting.

For the following reasons I must respectfully dissent from the majority opinion of this court.

The majority purports to restrict its holding to enunciation of the principle that an easement by prescription is accompanied by such rights (i.e. secondary easements) as are necessary for enjoyment of the primary easement, while remanding to the Harlan Circuit Court the issue of whether entry onto the servient estate, and the removal of trees and shrubs, was necessary for the use of the primary easement. However, the majority appears to answer the second issue as well.

The majority opinion states as follows:
... [T]his court is of the opinion that the owner of an easement acquired by personal negotiations, by eminent domain, by prescription, or otherwise, for the erection of electric wires may enter upon the premises over which the wires are constructed for the purpose of removing vegetation, or other growth or substance, that interferes with the natural and reasonable use of the easement for the purpose to which the land accommodated by the easement may be naturally and reasonably devoted.

In addition, the majority fails to distinguish between easements arising by prescription and easements resulting from express agreement.

Adverse possession can rest only upon "such open and notorious acts of physical possession as would put the owner upon notice of the assertion of a hostile claim." *H.F. Davis & Co. v. Sizemore,* 182 Ky. 680, 207 S.W. 16 (1918). In this case, the appellants, and their predecessors in title, were willing to permit the two utility lines to overhang their property. However, on each occasion when Kentucky Utilities came upon the property to clear trees and shrubs, tresspass actions were promptly initiated. It is my opinion that the prescriptive right of Kentucky Utilities is thus confined to the right to overhang two lines across the tract of land. As this court has stated, "[a]n easement by prescription is limited by the purpose for which it is acquired and the use to which it is put for the statutory period." *Williams v. Slate,* Ky., 415 S.W.2d 616 (1967). The easement "... will not ripen

into a greater estate after the period of limitation has passed. The right is crystallized as to form during the waiting period and is of the nature of the use during that period." *Baker v. Maggard,* Ky., 255 S.W.2d 45 (1953) (citations omitted).

To now permit Kentucky Utilities to come upon the land and destroy property appears to me an unreasonable expansion of rights incident to the prescriptive easement.

Therefore, I would reverse the Court of Appeals and affirm the judgment of the Harlan Circuit Court.