530

Steven B. MILAM and Amy
L. Milam, Appellants,

v.

VIKING ENERGY HOLDINGS,
LLC, Appellee.

No. 2011–CA–001060–MR.

Court of Appeals of Kentucky.

June 22, 2012.

H. Jefferson Herbert, Jr., Brian K. Pack, Glasgow, KY, for appellants.

Daniel N. Thomas, Hopkinsville, KY, for appellee.

Before ACREE, COMBS, and LAMBERT, Judges.

*OPINION*

LAMBERT, Judge:

In accordance with Kentucky Revised Statutes (KRS) 416.620(2), Steven B. Milam and Amy L. Milam (the Milams) have appealed from the May 12, 2011, findings of fact, conclusions of law, and interlocutory judgment of the Warren Circuit Court relative to the condemnation by Viking Energy Holdings, LLC (Viking) of a pipeline easement across their property. After thoroughly reviewing the record and the parties' arguments in their brief, we hold that the circuit court did not commit any error in its interlocutory ruling; hence, we affirm.

These proceedings began in March 2009 with the filing against the Milams and Republic Bank and Trust Company[1] of a petition for condemnation and to enforce the terms of a pipeline easement by Viking. Viking is a Delaware Limited Liability Company with its principal place of business in Bowling Green, Kentucky. The petition states that the company is licensed in the Commonwealth of Kentucky as a gathering line operator pursuant to 805 Kentucky Administrative Regulations (KAR) 1:190, and that it is engaged in the business of construction, maintaining, and operating a complex integrated pipeline system for the gathering, transportation, and delivery of natural gas from the Richardsville area to Bowling Green.

Viking also claimed to be a statutory common carrier pursuant to Kentucky Revised Statutes (KRS) 278.470, meaning that its receipt, transportation, and delivery of gas is a public use.

In the petition, Viking claimed to have obtained the rights to the pipeline easement on the Milams' property via a 2002 assignment, correction of assignment, and a 2006 quitclaim deed. The Milams' predecessors in interest, Gordon and Virgie Milam, conveyed a 30–foot wide pipeline easement to Pride Energy Corporation in 1985, under which a gas pipeline was buried. Viking then obtained the pipeline easement through assignment from Setco, which company had purchased the buried pipeline and pipeline easements at a Master Commissioner's sale in 2002. The buried pipeline has been declared in prior rulings to be Viking's separate trade fixture and personal property. Viking contended that the 1985 pipeline easement was still in full force and effect at the time it filed the petition. It further alleged that it initiated negotiations with the Milams when they refused to allow the company access to the property in order to repair any potential leaks in the line buried on their property. In an amended petition filed April 7, 2009, Viking amended the portions of the original petition referencing the location of the pipeline easement.

On April 14, 2009, the circuit court appointed commissioners pursuant to KRS 416.580, who were charged with viewing the real property and awarding the owners the fair market value. The commissioners filed their report on April 20, 2009, calculating the fair market value of the pipeline easement to be taken as $2,583.35. The

---

1. Republic Bank and Trust Company was named as a respondent in the petition based upon two mortgages the Milams made in 2003 and 2006, but did not participate below, other than filing an answer to the petition, and is not a party to this appeal.

Milams filed exceptions to the commissioner's award along with their answer to Viking's petition. They denied that a good faith offer had been made as described in the petition, that Viking had the right to acquire an easement by eminent domain, or that Viking owned the pipeline buried under their property. The Milams specifically asserted as an affirmative defense that the easement had terminated because the pipeline had ceased to be used and was abandoned, and that the applicable statute of limitations barred Viking from claiming the easement.

On June 25, 2009, the circuit court entered a temporary injunction to permit Viking to enter the property in order to repair a break in the buried gas pipeline and conduct additional testing. By order entered July 27, 2009, the court further permitted Viking re-entry to the property to complete testing and make any necessary repairs to the system. The necessary testing and repairs were completed as of August 21, 2009.

In June 2009, the circuit court entered a pretrial order, scheduling a two-day bench trial beginning November 3, 2009, and set several pretrial deadlines and procedures. The issues to be raised at trial included whether the parties engaged in good faith negotiations prior to the filing of the petition, whether Viking, as a private company, was required to comply with the federal requirement and provide the Milams with an appraisal, and whether Viking had the statutory authority to initiate condemnation of the pipeline easement. Viking also sought pretrial rulings regarding good faith negotiations, compliance with the federal uniform act, the commissioners' compliance with their statutory duties, burden of proof at trial, and its status as a common carrier. In an amended filing, the Milams set forth their arguments related to the legal issues in dispute, discussing the difference between a gathering line and a transmission line as well as the sufficiency of the identification of the easement.

On October 15, 2009, Viking filed a memorandum in support of its argument that it had the authority to exercise the right of eminent domain. It argued that it had such a right because it was a common carrier providing a statutory public service under Kentucky law. A supplemental memorandum was filed on December 3, 2009.

A bench trial commenced on November 3, 2009. On the second day of trial, the circuit court granted Viking's motion to amend its complaint to substitute Viking Oil and Gas, LLC, for Viking to conform to the evidence. The amended complaint was filed on November 13, 2009, and the Milams answered this complaint the following month, adopting their previous responses and defenses, and specifically arguing that the new complaint was untimely.

After the conclusion of the bench trial on March 18, 2010, the circuit court issued its findings of fact, conclusions of law, and interlocutory judgment in favor of Viking. This appeal follows.

On appeal, the Milams present essentially two arguments. The first addresses whether Viking was authorized to exercise the power of eminent domain to condemn the pipeline easement on their property. The second argument is two-fold, and it addresses whether the necessary statutory requirements were followed 1) by the proper company conducting a good faith negotiation with the Milams before filing the petition and 2) by providing a particular description of the property it sought to condemn. Viking has responded to each of these arguments, urging this Court to affirm the circuit court's interlocutory judgment.

Because the Milams have not challenged the circuit court's factual findings, but merely the application of the law to those facts, our review shall be *de novo*. *See Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App.1998) ("We review questions of law *de novo* [.]").

■ The first issue we shall address is whether the circuit court properly ruled that Viking had the power to condemn the pipeline easement. The circuit court's factual findings on this issue are as follows:

12. The Court finds that the Viking pipeline system, which begins west of the respondents' property, is used for the purpose of transporting natural gas through its system of pipeline easements revealed in Viking Exhibit 9. The natural gas passing through this system is produced from the leases obtained by Viking (see Viking Exhibit 10) and agreements with third-party gas producers. This natural gas travels through Viking's buried gas pipeline to the Viking treatment plant in Bowling Green where, after treatment of the natural gas, it is then further transported and sold by Atmos Energy Marketing, LLC, to the customers and end users in Bowling Green.

Based upon its findings of fact, the circuit court concluded as follows:

29. Viking Oil and Gas, LLC, which is wholly owned by Viking Energy Holdings, LLC is organized for the purpose of engaging in constructing, maintaining or operating gas pipelines for transporting or delivering gas services to the public. Viking Energy Holdings, LLC, transports natural gas through its integrated pipeline system, including natural gas produced to the west of the respondents' property by Henry Honaker and, in the near future, Archie Oliver.

30. Viking Oil and Gas, LLC, is a "common carrier," as defined in KRS

278.470, and its acquisition and use of easements and gas pipelines for the transmission of natural gas produced in Richardsville, Kentucky, to Atmos Energy Management, LLC in Bowling Green, Kentucky, for public consumption is a "public use" as statutorily designated by the Kentucky General Assembly. The respondents, as the parties challenging the condemnation, bear the burden of establishing the lack of public necessity of public use and any abuse of discretion, and they have failed to meet this burden in this instance.

31. The Kentucky General Assembly, in KRS 278.502, has provided:

Any corporation ... organized for the purpose of ... constructing, maintaining, or operating oil or gas wells or pipelines for transporting or delivering oil or gas, including oil and gas products, in public service may, if it is unable to contract or agree with the owner after a good faith effort to do so, condemn the lands and material or the use and occupation of the lands that are necessary for constructing, maintaining, drilling, utilizing, and operating pipelines, underground oil or gas storage fields, and wells giving access thereto and all necessary machinery, equipment, pumping stations, appliances, and fixtures ... for use in connection therewith, and the necessary rights of ingress and egress to construct, examine, alter, repair, maintain, operate, or remove such pipelines or underground gas storage fields. ...

The proceedings for condemnation shall be as provided in the Eminent Domain Act of Kentucky.

32. Viking Oil and Gas, LLC, holds all governmental and regulatory licenses and permits required for the continuous transmission of natural gas from the

Richardsville area to the facilities of Atmos Management Company, LLC, in Bowling Green, Kentucky, including a gathering line permit from the Kentucky Division of Oil and Gas. The petitioner's authority includes transmission of gas from wells located to the west of the respondents' property and operated by Henry Honaker and Archie Oliver, as well as additional wells in the area, through its integrated system of gas pipelines, which includes by necessity the Milams' gas pipeline easement. Viking Oil and Gas, LLC is regulated by the Kentucky Public Service Commission, though, apparently, is exempt from the Commission's jurisdiction at this time. The Court further notes that the Kentucky Finance & Administration Cabinet has determined that Viking is a public service company subject to public service company taxes under KRS 136.120.

33. Wherefore, this Court concludes that the petitioner is a corporation organized for the purpose of constructing, maintaining, and operating oil and gas pipelines for transporting or delivering natural gas and gas products in public service, as contemplated under KRS 278.502.

In their brief, the Milams contend that KRS 278.502 authorizes the condemnation of property for pipelines only in certain circumstances. For purposes of this case, the Milams argue that Viking must be operating its pipeline to transport natural gas in public service in order to seek condemnation of the pipeline easement. Because the pipeline at issue was a gathering line, as opposed to a transmission line, and Kentucky's Administrative Regulations distinguish the two, the Milams assert that the conveyance of natural gas from one private company to another does not meet the definition of "in public service" pursuant to KRS 278.502.

Viking, on the other hand, asserts that the General Assembly did not see fit to distinguish between a "gathering line" and a "transmission line" in KRS 278.502, but rather used the general term "pipeline," and that there is no legal authority to support the Milams' narrow reading of the statute's express language and exclude the subject pipeline from application of the statute. Furthermore, Viking continues to argue, as it did below, that it is both a common carrier and is engaged in public service.

KRS 278.502 reads as follows:

Any corporation or partnership organized for the purpose of, and any individual engaged in or proposing to engage in, constructing, maintaining, or operating oil or gas wells or pipelines for transporting or delivering oil or gas, including oil and gas products, in public service may, if it is unable to contract or agree with the owner after a good faith effort to do so, condemn the lands and material or the use and occupation of the lands that are necessary for constructing, maintaining, drilling, utilizing, and operating pipelines, underground oil or gas storage fields, and wells giving access thereto and all necessary machinery, equipment, pumping stations, appliances, and fixtures, including tanks and telephone lines, and other communication facilities, for use in connection therewith, and the necessary rights of ingress and egress to construct, examine, alter, repair, maintain, operate, or remove such pipelines or underground gas storage fields, to drill new wells and utilize existing wells in connection therewith, and remove pipe, casing, equipment, and other facilities relating to such underground storage fields and access wells. The proceedings for con-

demnation shall be as provided in the Eminent Domain Act of Kentucky.

The General Assembly simply used the term "pipelines" when it created this legislation, and it did not opt to create a difference between what type of pipeline a company was seeking to condemn. In contrast, the Administrative Regulations for the Division of Oil and Gas differentiate between a "gathering line" and a "transmission line" for purposes of licensure. A "gathering line" is

> any pipeline that is installed or used for the purpose of transporting crude oil or natural gas from a well or production facility to the point of interconnection with another gathering line, an existing storage facility or a transmission or main line, including all lines between interconnections, except those lines or portions thereof subject to the exclusive jurisdiction of the United States Department of Transportation under 49 C.F.R. Parts 191, 192, 194 and 195.

805 KAR 1:190(5). A "transmission line" is "a pipeline that is subject to the exclusive jurisdiction of the United States Department of Transportation under 49 C.F.R. Parts 191, 192, 194 and 195." 805 KAR 1:190(9).

Despite the regulatory treatment of the different types of pipelines, there is no authority to extend this difference to KRS 278.502, and we decline the Milams' request that we do so. Furthermore, we have reviewed and agree with Viking's arguments that it is a common carrier and engaged in public services for purposes of this suit, although we acknowledge that the Milams did not specifically address these questions in their appellate brief. Therefore, we hold that Viking is not excluded from application of KRS 278.502 based upon its status as a gathering line operator.

■ For its second, two-part argument, the Milams contend that Viking did not comply with the statutory requirements for eminent domain. They first argue that Viking did not engage in good faith negotiations with them prior to filing the condemnation petition, nor did Viking obtain an appraisal of the property. The Milams contend that Viking's attempt to establish the good faith negotiation element was invalid because all but one of the letters introduced were not from Viking or Viking Oil and Gas, LLC, but were from Viking Energy, LLC, another entity. The final letter received from an attorney for Viking, they assert, could not represent good faith negotiations because it stated that it would have no choice but to initiate condemnation proceedings if they (the Milams) did not agree to terms. Viking, in turn, contends that it was the Milams who refused to engage in the process of negotiation after Viking refused their counteroffer. It also addresses the Milams' arguments about its corporate structure and identity.

There is no dispute between the parties that a corporation seeking such property through eminent domain must first make a good faith attempt to reach an agreement with the property owner prior to the initiation of condemnation proceedings. *See* KRS 278.502 and KRS 416.550. Our first consideration is whether the proper corporate entity conducted the negotiations that were done. We agree with the circuit court and Viking that this was the case and that the circuit court properly permitted Viking to amend its complaint to conform to the evidence presented concerning the results of the corporate reorganization. The evidence presented confirms that Viking Energy, LLC, the original company name, conducted the good faith negotiations as reflected in the letters introduced in the record. After a corporate reorganization, Viking Energy, LLC, merged into

Viking Energy Holdings, LLC, the only member of Viking Oil and Gas, LLC, which operated the integrated pipeline system. Thus, the two companies were synonymous.

Likewise, we agree that Viking attempted to engage in good faith negotiations with the Milams, despite their refusal to discuss the matter with Viking or legal counsel after their counteroffer was rejected. Because the Milams' argument related to this question is intertwined with the corporate identity issue, which we have decided in Viking's favor, the Milams' argument must fail on this issue as well. But we are satisfied on the basis of the written correspondence that good faith negotiations were undertaken in conformity with the applicable statutes.

 The Milams next argue that Viking did not comply with its statutory duty to obtain an appraisal, but rather only made a cash offer based upon an amount offered in 1985 for the same easements. Without citation to any statutory or case law, the Milams have argued that Viking should have obtained an appraisal by a competent real estate appraiser in order to determine the proper measure of damages in this case. Again, we agree with the circuit court and Viking that KRS 278.502 does not require a private company to obtain an appraisal in a case such as this.

Finally, the Milams argue that Viking failed to provide a particular description of the property it was seeking to condemn pursuant to KRS 416.570(2) (a petition must contain "[a] particular description of the property . . . sought to be condemned[.]"). The gist of their argument is that the circuit court appeared to acknowledge that the survey upon which the petition was based did not accurately show the position of the pipeline because it subsequently ordered that an accurate survey be made. In its interlocutory judgment, the circuit court concluded that based upon the testimony of a licensed surveyor, Mark Billingsley, the location of the centerline for the easement and the location of the gas pipeline buried in the easement were adequately and particularly described. Viking contends that the Milams failed to raise this challenge to the pipeline's location as an affirmative defense. Again, we must reject the Milams' argument. We agree with the circuit court and Viking that the property was adequately described for purposes of the condemnation petition.

For the foregoing reasons, the Warren Circuit Court's interlocutory judgment is affirmed.

ALL CONCUR.