RENDERED: DECEMBER 16, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1214-ME

FLORENCE OWNER 1, LLC;
FLORENCE OWNER 2, LLC;
FLORENCE OWNER 3, LLC;
FLORENCE OWNER 4, LLC;
FLORENCE OWNER 5, LLC;
FLORENCE OWNER 6, LLC;
FLORENCE OWNER 7, LLC; AND
M&T REALTY CAPITAL
CORPORATION                                                                          APPELLANTS

|  |  |  |
|---|---|---|
| v. | APPEAL FROM BOONE CIRCUIT COURT<br>HONORABLE JAMES R. SCHRAND, JUDGE<br>ACTION NO. 21-CI-00119 | |

DUKE ENERGY, INC.                                                                    APPELLEE

AND

NO. 2021-CA-1291-MR

M&T REALTY CAPITAL
CORPORATION, A MARYLAND
CORPORATION, AS THE SUB-
SERVICER FOR WELLS FARGO
BANK, NATIONAL ASSOCIATION
AS MASTER SERVICER FOR US
BANK NATIONAL ASSOCIATION;

FLORENCE OWNER 1, LLC;
FLORENCE OWNER 2, LLC;
FLORENCE OWNER 3, LLC;
FLORENCE OWNER 4, LLC;
FLORENCE OWNER 5, LLC;
FLORENCE OWNER 6, LLC; AND
FLORENCE OWNER 7, LLC                                    APPELLANTS


                    APPEAL FROM BOONE CIRCUIT COURT
v.                  HONORABLE JAMES R. SCHRAND, JUDGE
                        ACTION NO. 21-CI-00119



DUKE ENERGY KENTUCKY, INC.                               APPELLEE



                              OPINION
                             AFFIRMING

                         ** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND LAMBERT, JUDGES.

CALDWELL, JUDGE:  This is an interlocutory appeal involving a condemnation

action by a private utility seeking an easement to erect towers and run electrical

transmission lines on the property of the Appellants, who either own or are the

mortgagor of the land and the apartment complex which sits upon it.  The Boone

Circuit Court granted the condemnation petition, granting Duke Energy Kentucky

Inc. (hereinafter "Duke Energy") an easement upon the land owned by the

Appellants (hereinafter "Florence Owners") and granting the right to gain

                                  -2-

possession of the property described in the order upon payment to Florence Owners the amount awarded by the appointed Commissioners. Having reviewed the record below, the briefs of the parties, and the order of the trial court, we affirm the order of the trial court.

**FACTS**

In February of 2020, Duke Energy had completed a site study and had determined the best location for a new high-voltage transmission line in Boone County. Because the area was growing so rapidly, it had been determined that a new transmission line was necessary to support the increased retail, residential, and industrial demands coming to the area.

Duke Energy, through a subcontractor, reached out to the owners of an apartment complex owned by Florence Owners[1] named "Grand of Florence" to discuss acquiring an easement over the complex land to situate steel poles which would carry the overhead high-voltage power lines. The site study had led to the determination that the lines would be best situated at the entrance to the complex, on Burlington Pike.

---

[1] There were various enumerated LLCs formed to acquire the land, build, and own the apartment complex. There is no delineation between the various "Florence Owners" entities in the order or the briefs of the parties, so we will refer to them in this Opinion as Florence Owners. The mortgagor of the project, M&T Realty Capital Corporation, as the sub-servicer for Wells Fargo Bank, was also named in the condemnation petition and is a party-Appellant herein.

The entities began negotiations, with the subcontractor on behalf of Duke Energy first offering $50,997, then $57,732 for the easement in the summer of 2020. Florence Owners at one time countered with $250,000 but withdrew that offer upon realizing the scope of the project, which would involve high-voltage transmission lines. Further, the signage for the apartment complex would need to be removed, and the easement would allow Duke Energy to have access not just to the easement property, but to the entirety of the apartment complex, should it be necessary to service the easement. The final offer Duke Energy made through their agent subcontractor was $75,000 in December of 2020.

Unbeknownst to Florence Owners' representatives at the time, a condemnation suit was filed by Duke Energy on January 25, 2021. Continuing the negotiations unaware of the filing of the condemnation action, Florence Owners provided a counteroffer, based upon the actual pole locations, and staked area of the easement, which were only provided by Appellee a month before. That counteroffer was $5,650,000.[2]

The Boone Circuit Court held a hearing on the petition and determined that Duke Energy had the statutory right to exercise the power of

---

[2] This figure included compensation for the "perceived stigma" of high-voltage transmission lines, which Florence Owners feared might impact the future rentability of the units. During the public notice period, the perceived deleterious effects, whether real or imagined, of living close to transmission lines were brought up by members of the public.

eminent domain, that Duke had complied with the requirements of the Kentucky Constitution, the Eminent Domain Act (KRS[3] 416.540-416.670), and common law and had the right to condemn the easement. Florence Owners appeal that determination and allege that Duke Energy did not have the right to take the property and failed to negotiate in good faith.

## STANDARD OF REVIEW

Because this matter was tried without a jury, we review the trial court's factual findings under a clearly erroneous standard and legal issues are reviewed *de novo.* *See God's Center Foundation, Inc. v. Lexington Fayette Urban Cnty. Government*, 125 S.W.3d 295, 300 (Ky. App. 2002).

## ANALYSIS

At the outset, we provide an overview of the Eminent Domain Act and condemnation procedures outlined therein. In *Allard v. Big Rivers Electric Corporation*, 602 S.W.3d 800 (Ky. App. 2020), this Court provided a history of the Eminent Domain Act and a brief outline of the usual condemnation process contained therein.

> In 1976, the General Assembly enacted the Eminent Domain Act of Kentucky, codified in KRS 416.540-416.680. "The purpose of the act was to set up a new and uniform condemnation procedure." *Ratliff v. Fiscal Court of Caldwell County, Kentuck*y, 617 S.W.2d 36, 38 (Ky. 1981). The term "[c]ondemn" is defined as

---

[3] Kentucky Revised Statutes.

"to take private property for a public use under the right of eminent domain" and the term "[c]ondemnor" is defined as "any person, corporation or entity, including the Commonwealth of Kentucky, its agencies and departments, county, municipality and taxing district authorized and empowered by law to exercise the right of eminent domain[.]"  KRS 416.540(1) and (2).

. . .

KRS 416.570 provides that the condemnor must file a verified petition setting forth the following information:

> Except as otherwise provided in KRS 416.560, a condemnor seeking to condemn property or the use and occupation thereof, shall file a verified petition in the Circuit Court of the county in which all or the greater portion of the property sought to be condemned is located, which petition shall state that it is filed under the provisions of KRS 416.550 to 416.670 and shall contain, in substance:
>
> > (1) Allegations sufficient to show that the petitioner is entitled, under the provisions of applicable law, to exercise the right of eminent domain and to condemn the property, or the use and occupation thereof, sought to be taken in such proceedings;
> >
> > (2) A particular description of the property and the use and occupation thereof sought to be condemned; and
> >
> > (3) An application to the court to appoint commissioners to award the amount of compensation the owner of the property sought to be condemned is entitled to receive therefor.

KRS 416.610, in turn, sets forth the proceedings in eminent domain cases and provides for the entry of an interlocutory judgment if certain findings are made:

(1) After the owner has been summoned twenty (20) days, the court shall examine the report of the commissioners to determine whether it conforms to the provisions of KRS 416.580. If the report of the commissioners is not in the proper form the court shall require the commissioners to make such corrections as are necessary.

(2) If no answer or other pleading is filed by the owner or owners putting in issue the right of the petitioner to condemn the property or the use and occupation thereof sought to be condemned, the court shall enter an interlocutory judgment which shall contain, in substance:

(a) A finding that the petitioner has the right, under the provisions of KRS 416.550 to 416.670 and other applicable law to condemn the property or the use and occupation thereof;

(b) A finding that the report of the commissioners conforms to the provisions of KRS 416.580;

(c) An authorization to take possession of the property for the purposes and under the conditions and limitations, if any, set forth in the petition upon payment to the owner or to the clerk of the court the amount of the compensation awarded by the commissioners;

(d) Proper provision for the conveyance of the title to the land and material, to the extent condemned, as adjudged therein in

the event no exception is taken as provided in KRS 416.620(1).

(3) Any exception from such interlocutory judgment by either party or both parties shall be confined solely to exceptions to the amount of compensation awarded by the commissioners.

(4) If the owner has filed answer or pleading putting in issue the right of the petitioner to condemn the property or use and occupation thereof sought to be condemned, the court shall, without intervention of jury, proceed forthwith to hear and determine whether or not the petitioner has such right. If the court determines that petitioner has such rights, an interlocutory judgment, as provided for in subsection (2) of this section, shall be entered. If the court determines that petitioner does not have such right, it shall enter a final judgment which shall contain, in substance:

> (a) A finding that the report of the commissioners conforms to the provisions of KRS 416.580;

> (b) A finding that the petitioner is not authorized to condemn the property or the use and occupation thereof for the purposes and under the conditions and limitations set forth in the petition, stating the particular ground or grounds on which the petitioner is not so authorized;

> (c) An order dismissing the petition and directing the petitioner to pay all costs.

"[T]he judgment referred to in KRS 416.610 as an 'interlocutory judgment,' was final and appealable as to the issue of the right to condemn and the right to

-8-

immediate entry." *Hagg v. Kentucky Utilities Co.*, 660 S.W.2d 680, 681 (Ky. App. 1983).

*Id.* at 805-07.

### 1. Burden of Proof

Initially, the parties contest which of them had the burden of proof at the trial court level. Florence Owners insist that the condemnee only has the burden of proof when contesting the public nature of the project. Duke Energy insists that the party opposing the condemnation has the burden to prove lack of good faith, lack of necessity, or unauthorized exercise of the power of eminent domain.

As the public nature of the project was not challenged by Florence Owners, the burden of proving fraud, bad faith or abuse of discretion was properly theirs. "The respondents, as the parties challenging the condemnation, bear the burden of establishing the lack of public necessity of public use and any abuse of discretion . . . ." *Milam v. Viking Energy Holdings, LLC*, 370 S.W.3d 530, 533 (Ky. App. 2012). *See also Commonwealth Dep't of Highways v. Vandertoll*, 388 S.W.2d 358, 359 (Ky. 1964) ("[W]hen the department of highways by official order determines that an acquisition is necessary a condemnee, in order to defeat such an acquisition, has the burden of proving fraud, bad faith, or abuse of discretion.").

## 2. *Easement is not Overbroad*

Florence Owners insists that Duke Energy is taking more of its property than necessary for the expressed purpose. However, Florence Owners is conflating the size of an easement with the form of estate taken. "It reasonably follows that an *estate* greater than what is 'needed' to achieve the legal purpose cannot be taken." *Lexington-Fayette Urban Cnty. Government v. Moore*, 559 S.W.3d 374, 381 (Ky. 2018) (emphasis added). In other words, when an easement will serve the public purpose stated as making the taking necessary, it is not proper for the condemnor to take an estate in fee simple. Further, the amount of land necessary to support the public purpose of the taking is generally left to the condemnor's discretion.[4] In the present case, Duke Energy sought an easement of .209 acres of Florence Owners' property of over twenty-seven acres. The trial court found this easement to be consistent with the requirements of the stated project and we find no fault with that determination.

Next, Florence Owners argues that the easement was overbroad and allowed Duke Energy to have "access rights to all adjoining land," not part of the easement owned by Florence Owners. However, as Duke Energy points out, it is

---

[4] *See God's Center Foundation, Inc.*, 125 S.W.3d at 299 ("Generally, the condemning body has broad discretion in exercising its eminent domain authority including the amount of land to be taken.").

-10-

consistent with Kentucky law to allow reasonable ingress and egress through land

not subject to the easement to access the easement proper.

> An easement confers a right upon the dominant tenement to enjoy a right to enter the servient tenement. *See Scott v. Long Valley Farm Kentucky, Inc.*, 804 S.W.2d 15, 16 (Ky. App. 1991). While an easement holder may not *expand* the use of the easement, it is equally true that the easement grantor may not interfere with the easement holder's use of the easement. *Commonwealth, Dept. of Fish and Wildlife Res. v. Garner*, 896 S.W.2d 10, 13-14 (Ky. 1995).

*Sawyers v. Beller*, 384 S.W.3d 107, 111 (Ky. 2012).

Florence Owners also complain that the easement allows Duke

Energy to enter upon the adjoining land to clear vegetation which is adjacent to the

easement. Again, such allowance is consistent with Kentucky law, contrary to

Florence Owners' allegations.

> Insofar as the use of the secondary easement is concerned, this court is of the opinion that the owner of an easement acquired by personal negotiations, by eminent domain, by prescription, or otherwise, for the erection of electric wires may enter upon the premises over which the wires are constructed for the purpose of removing vegetation, or other growth or substance, that interferes with the natural and reasonable use of the easement for the purpose to which the land accommodated by the easement may be naturally and reasonably devoted.

*Farmer v. Kentucky Utilities Co.*, 642 S.W.2d 579, 581 (Ky. 1982).

Next, Florence Owners complain that the easement prevents them from placing any obstructions which might interfere with Duke Energy's use of the easement. Again, such language is entirely consistent with Kentucky law. "The owners of the easement and the servient estate have correlative rights and duties which neither may unreasonably exercise to the injury of the other." *Commonwealth, Dep't of Fish & Wildlife Resources v. Garner*, 896 S.W.2d 10, 13 (Ky. 1995).

The easement also allows Duke Energy to use the adjoining land while constructing, maintaining, and repairing the transmission lines. Again, such is consistent with Kentucky law.

> We affirm so much of the decision of the Court of Appeals as holds that the Kentucky Utilities Company, by reason of its primary easement, has a right to enter upon the servient property beneath the lines and in the immediate vicinity thereof for the purpose of repairs and maintenance.

*Farmer*, 642 S.W.2d at 581.

Lastly, Florence Owners complain that the easement infringes on their rights to sue should Duke Energy cause any damage or otherwise tortiously interfere with their property rights by attempting to limit the statute of limitations to ninety (90) days. Whether that section of the easement is effective and enforceable is a question which will be ripe for determination should the eventuality occur.

Ripeness under federal law is a jurisdictional requirement under Article III of the United States Constitution. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08, 123 S. Ct. 2026, 2030, 155 L. Ed. 2d 1017 (2003). This requirement similarly appears under the Kentucky Constitution in that circuit courts have "original jurisdiction of all **justiciable** causes not vested in some other court." Ky. Const. § 112(5) (emphasis added). For a claim to be justiciable, it must be ripe. *Nordike v. Nordike*, 231 S.W.3d 733, 739 (Ky. 2007). As this Court has recognized, "[t]he basic rationale of the ripeness requirement is 'to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements[.]'" *Barber v. Bradley*, 505 S.W.3d 749, 760 n.5 (Ky. 2016) (quoting *W.B. v. Cab. for Health & Family Servs.*, 388 S.W.3d 108, 114 (Ky. 2012)). "[A] fundamental tenet of Kentucky jurisprudence [is] that courts cannot decide matters that have not yet ripened into concrete disputes. Courts are not permitted to render advisory opinions." *Nordike*, 231 S.W.3d at 739 (citations omitted).

*Bingham Greenebaum Doll, LLP v. Lawrence*, 567 S.W.3d 127, 129-30 (Ky. 2018) (emphasis in original).

### 3. Good Faith Negotiations

Finally, Florence Owners allege that Duke Energy did not negotiate in good faith before filing the condemnation action. "The constitution, statutes and case law of Kentucky necessarily imply the exercise of good faith . . . in using its power to condemn and/or take private property from its citizens." *City of Bowling Green v. Cooksey*, 858 S.W.2d 190, 192 (Ky. App. 1992). Florence Owners complain that Duke Energy took months to provide it with information related to

the placement of the easement and the types of power lines it intended to install.

The trial court found as follows:

> In this matter, Duke attempted to ensure the public was aware of the Project. They considered one hundred and seventy-four routes which are contained in a Line Route Evaluation Report before on [sic] deciding on the current route. They sent a letter to effected [sic] property owners advising them of an open house to discuss the project and hear concerns with it. Additionally, Duke made three offers to Florence between June, 2020 and January, 2021 when they filed the instant action. This Court cannot find that Duke acted in bad faith when negotiating the acquisition of the property, and, therefore the Court finds Duke complied with the provisions found in KRS 416.550.

We cannot say that the trial court's findings here are clearly erroneous and we agree with the trial court's legal conclusion. Remembering that the amount Duke Energy must compensate Florence Owners for the easement was determined by appointed Commissioners,[5] we cannot say that the offers made by Duke Energy

---

[5] KRS 416.580(1)(a). From the Interlocutory Order:

> The Commissioners filed their Report on March 11, 2021, valuing Florence's property as (sic) at $150,000 before the taking and $130,000 after the taking determining the value of the taking to be $20,000. Florence owns an additional contiguous parcel in the area and the parties agree the before and after values were based on the PVA value of the second parcel which is not subject to the Easement. The Court ordered the Commissioners to perform a second valuation. They have done so valuing the property at $40,000,000 before the taking and $39,895,000 after the taking for a valuation of the taking at $105,000. The Court finds the Commissioners' Award after the second evaluation complies with the statutory requirements.

See KRS 416.660(1):

-14-

during negotiations were conclusive of bad faith or that Florence Owners' counteroffer was reasonable.

Rather, we agree with the trial court that Duke Energy attempted, in good faith, to negotiate with Florence Owners prior to filing the condemnation action, and continued to negotiate even after so filing, indicating that Duke Energy was still open to settling the matter without judicial intervention. "The judge found that there was an offer which the landowners rejected. The evidence showed that efforts to buy the property were made over a substantial period of time, that the state made a legitimate offer, and the landowners flatly rejected it." *See Coke v. Commonwealth Dep't of Finance*, 502 S.W.2d 57, 59 (Ky. 1973). Evidence of the parties' being unable to come to an agreement does not mean the trial court's finding of good faith was clearly erroneous or that such is proof of lack of good faith on the part of Duke Energy; the statutory scheme exists because it is quite often not possible for the parties to come to an agreement. Lastly, the Commissioners arrived at a valuation of $105,000, which is closer to the highest

---

In all actions for the condemnation of lands under the provisions of KRS 416.550 to 416.670, except temporary easements, there shall be awarded to the landowners as compensation such a sum as will fairly represent the difference between the fair market value of the entire tract, all or a portion of which is sought to be condemned, immediately before the taking and the fair market value of the remainder thereof immediately after the taking, including in the remainder all rights which the landowner may retain in the lands sought to be condemned where less than the fee simple interest therein is taken, together with the fair rental value of any temporary easements sought to be condemned.

amount offered by Duke Energy ($75,000) than it is to the amount of Florence

Owners' final counteroffer ($5,650,000), supporting the finding that Duke Energy

acted in good faith during the negotiations.

## CONCLUSION

The trial court's findings of fact were not clearly erroneous, and its

legal conclusions were consistent with controlling law.  The trial court properly

granted the interlocutory judgment to condemn the property; thus, we affirm.


ALL CONCUR.

BRIEFS FOR APPELLANTS:

Daniel A. Hunt
Matthew Fellerhoff
Covington, Kentucky

BRIEF FOR APPELLEE:

Nicholas J. Pieczonka
Alex E. Wallin
Cincinnati, Ohio