## Thomas et al. v. Holmes et al.

February 20, 1948.

L. B. Handley, Judge.

634

Terry L. Hatchett for appellants.

Cecil C. Wilson for appellees.

OPINION OF THE COURT BY CLAY, COMMISSIONER—
Reversing.

This controversy involves the rights of appellees to the use of a well and pumping equipment on the premises owned by appellant, Mrs. Thomas. The parties own adjoining lots. Suit was filed by appellees to enjoin appellants (Mrs. Thomas and husband) from interfering with their full use and enjoyment of the well, its equipment and appurtenances, and to recover damages. Upon final submission the Chancellor adjudged that: (1) Appellees pay appellants $115.75, representing one-half of the cost of new electrical pumping equipment installed by appellants, (2) appellees have the right to connect necessary pipes to transmit water from the well, (3) appellants be permanently enjoined from interfering with appellees' free use of water and their right to make necessary installations and connections on the pump, and (4) the parties will jointly have installed an electric meter on the pump at the well and will each pay one-half of the electric bill.

In 1943, appellee, Mrs. Holmes, purchased two adjoining tracts of land in Barren County. In 1944, she sold the smaller of these two tracts to one Royse, and the deed to Royse contained the following provision:

"It is understood and agreed that the party now owning the Dean house and land above the property herein conveyed and the successors thereto may have a right to use the water in the well on the property herein conveyed."

The larger tract which Mrs. Holmes then owned, and now owns, has situated on it the ''Dean House'' mentioned in the above reservation. There were two subsequent conveyances of the smaller tract, each containing the provision above quoted. In March 1945, the property was conveyed to appellant, Mrs. Thomas, but this last deed contained no reservation whatsoever. She has, however, recognized the right of appellees to use the water from the well. The real controversy in the case is whether or not appellees have the additional right to joint use of the pumping equipment.

The original equipment at the well was installed by appellees, and was there when appellant, Mrs. Thomas, purchased the property. For several years this installation had been used to supply water to the premises of both parties. It was electrically operated, and the current meter was in the appellants' house. By arrangement with the prior owners, appellees had contributed 50c per month to the payment of the electric bill. This arrangement had been continued after appellants bought the property, although there seems to have been no specific agreement about the matter.

On April 27, 1946 (approximately a year after the purchase of the property), appellants advised appellees that they would not pump any more water for appellees' use. Thereafter appellees' son removed the fly wheel from the pump, and it could be operated by neither party. Appellants then installed new pumping equipment at a cost of $231.50, which is there now, but supplies no water to appellees. The position taken by appellants is that they are under no obligation and cannot be compelled to pump water to appellees' premises or to cooperate with appellees on any joint basis.

There is no merit in appellants' contention that appellees had an adequate remedy at law. If the latter had the right to take water from the well and the right to use the pumping equipment for removing it to their premises, it is clear that a judgment for damages would be totally inadequate to compensate for their continuing injury. This is properly an equitable action. See 17 Am. Jur., Easements, sec. 152.

A primary question in the case is whether or not the right to use of the water reserved by appellees was

limited to taking water from the well at the well or whether they had the incident right to convey it elsewhere by means of pumps and pipes. The nature and extent of an easement must be determined in the light of its purpose. As stated in 17 Am. Jur., Easements, sec. 97:

"The extent of an easement is determinable by a true construction of the grant or reservation by which it is created, aided by any concomitant circumstances which have a legitimate tendency to show the intention of the parties."

At the time this easement was created, appellants had pumping equipment at the well and it was obviously intended that water should, or could, be taken therefrom and transmitted to the adjoining property by mechanical means. Even had there been no pump or pipes at the well at that time, the easement should not be limited to simply taking water out by bucket or hand pump. See Cram v. Chase, 35 R. I. 98, 85 A. 642, 43 L. R. A., N. S. 824; Berlin et al. v. Robbins et ux., 180 Wash. 176, 38 P. 2d 1047. A right to use water from a well would include such incidents as are reasonably necessary for that purpose. 56 Am. Jur., "Waters," Section 107.

There is a conflict in the evidence as to whether or not appellants, at the time the property was purchased, had notice that any pump or pipes were located at the well. It is our view that the presence of these installations was apparent, and appellants were bound to take notice. Even if they did not, the reserved right to use water would include the right to install reasonably necessary equipment.

The next question is whether or not appellees had a proprietary interest in the equipment at the well, at least to the extent that appellants committed a wrong in removing this equipment and substituting a new pump. This equipment was a fixture, and it passed with the conveyance of the land on which the well was located. 381.200, KRS. In any event appellants had a right to replace the pump when appellees by their own wrong doing had made the original equipment inoperative by removing an essential part thereof.

The final question is whether the Court properly

made a contract between these parties. We think not. The record does not indicate that they had any binding agreement with respect to the use of the pump and the payment of the electric bill. There was some understanding that the equipment be continued in use as it had been originally, and that appellees would contribute 50c a month on the electric bill. This was, however, only a tacit arrangement which did not rise to the dignity of an irrevocable contract. Appellees had nothing more than a permissive license to use the equipment.

They insist that the principles of equitable estoppel should apply because appellants acquiesced in the use of this equipment for a substantial period of time. Mere acquiescence, however, is not sufficient to create an estoppel. The party asserting it must have been induced to act to his detriment or misled to his injury. See Mercer v. Federal Land Bank of Louisville, 300 Ky. 311, 188 S. W. 2d 489. There is no such element here.

Our problem is very similar to that in the case of Young et ux. v. Wehmeyer et ux., 192 Ky. 589, 234 S. W. 201. The plaintiffs had been conveyed a tract of land which granted them "the right to use water from the windmill cistern at the barn located on lot No. 53." Defendants owned lot No. 53. Suit was brought to enjoin defendants from dismantling the windmill over the cistern and blocking the pipes which led to plaintiff's premises. The Court, in recognizing the right of defendants to remove the windmill and other fixtures, stated as follows, page 590 of 192 Ky., page 201 of 234 S. W.:

"It is manifest that plaintiffs had no other right or easement in and to the windmill cistern on defendants' premises other than to use water therefrom as long as it contained water.

\* \* \* \* \* \*

"While defendants had no right to do anything that would interfere with plaintiffs' right to the use and enjoyment of the water in the cistern, there was nothing requiring defendants to repair the windmill, nor could they be compelled to permit it to remain on the premises a menace to them, their family, or others."

In that opinion reference was made to a New Hamp-

shire case which recognized the principle that when one has granted an easement to another, he is not bound to do more than abstain from acts inconsistent with the proper enjoyment of the easement.

A careful consideration of this record has convinced us that appellees had no legal or equitable right in or to the original equipment on the property or its continued use, or the use of substituted equipment placed there by appellants. Stripping the case down to its essentials, we conclude that appellees have the right to the use of the water in the well, and that they have the incident right to install pumping equipment and pipes to service their premises, but their rights extend no further. We realize the Chancellor was attempting to work out an equitable solution of the delicate problem presented, but in doing so he appropriated the property of appellants for the benefit of appellees. The provision in the judgment that appellees pay one-half the cost of the new equipment and that they pay one-half the expense of operating it does not justify compelling appellants to permit the use of their equipment against their will. We cannot in law or equity create such a contract for the parties.

There is some doubt that appellees may be able to install a separate pump of their own, but the only evidence on the question indicates that this may be done. It would be most impractical and inconvenient for each of the parties to operate his own independent pumping system, as a single pump would serve the purpose, but this difficulty does not authorize a court to appropriate the property of appellants. We cannot refrain from remarking that the parties to this litigation should have solved their differences amicably, and it is our hope that this may still be done. Since they have so far failed to do so, it is not the province of the courts to make an agreement for them.

For the reasons stated, the judgment is reversed for the entry of judgment consistent with this opinion.

Judge Latimer not sitting.