COMMONWEALTH Of Kentucky, DEPARTMENT OF FISH & WILDLIFE RESOURCES, C. Thomas Bennett, Commissioner, and Fish & Wildlife Resources' Commission, David Godby, Chairman, Appellants

v.

Jacob Verl GARNER, Appellee.

No. 94–SC–567–DG.

Supreme Court of Kentucky.

March 23, 1995.

Chris Gorman, Atty. Gen., Douglas Scott Porter, and Grant Winston, Asst. Attys. Gen., Frankfort, for appellants.

Charles C. Adams, Adams & Adams, Somerset, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed a decision of the circuit court giving a permanent injunction against the Department of Fish & Wildlife Resources, prohibiting it from erecting or reerecting a gate or other obstruction on land owned by the United States of America

and of which the Department of Fish & Wildlife Resources is the licensee.

The questions presented are whether Garner has the right to permanently enjoin the Fish & Wildlife Commission from placing any gates on any of the subject roads in the wildlife management area; whether Fish & Wildlife was acting within its police power by installing gates in the area; whether a passway easement to a cemetery is an easement and whether gates across passways are permitted; and whether the United States of America is an indispensable party to this action.

The United States of America acquired title to approximately 89,734 acres of the Wolf Creek Dam and Lake Cumberland project in the 1950's. Under a 25-year agreement, which was most recently renewed in 1988, the Kentucky Department of Fish & Wildlife Resources is licensed by the United States to manage a fish and wildlife area known as "The Lake Cumberland Wildlife Management Area" on the property. The use of the land must be consistent with the rules and regulations for public use prescribed by the Secretary of the Army through the United States Army Corps of Engineers.

On July 18, 1988, the United States and Fish & Wildlife renewed a written license agreement for the area. At about that time, Fish & Wildlife began to erect a number of gates across a few roads in the area. The reason for the installation of the gates was to regain a measure of control and security over the area so as to reduce vandalism and dumping and to otherwise foster its wildlife program. Another reason was to restrict vehicular access to a limited portion of the area during certain times of the year. Three of the roads restricted by gates provided ingress to a small and old cemetery which occupied about three-quarters of an acre within the area. On occasion during the rainy season, some or all of the three roads were under water as a result of flooding. In 1992, Garner, whose great grandmother and cousin are among the dozen or so persons buried in the cemetery, destroyed the gates on the three roads. The locked gates blocked his access to the cemetery and were located on the exterior boundary line of the property. Fish & Wildlife immediately replaced the gates, and Garner, who testified that he had removed the gates on three earlier occasions, filed an action for declaratory and injunctive relief claiming the right of free ingress to and egress from the cemetery. The United States of America was never made a party to the action. The trial court ruled that the United States was not an indispensable party and that Garner was entitled to free access to the cemetery by motor vehicle and could not be required to open a gate or unlock a lock. Fish & Wildlife was permanently enjoined from erecting gates, fences or any other obstruction on any of the three roads in question. Fish & Wildlife appealed and the Court of Appeals affirmed the decision of the trial court. This Court granted discretionary review.

After the Court of Appeals dissolved the temporary injunction, the gate on Poynter Creek Road was moved from .9 of a mile from the cemetery to 50 to 75 feet from it. Fish & Wildlife built a parking area directly adjacent to the cemetery so that visitors could park within a few feet of the graveyard. Garner testified that he had visited the site six times between 1957 and the time the lawsuit began. The plot in question is known as Silvers Cemetery. Fish & Wildlife presented evidence that the gates were locked only from October through March 15 and were unlocked over the Memorial Day weekend. They also presented testimony that Garner was offered a key to unlock all of the gates. Fish & Wildlife presented evidence that the gates were up for three to five years until May, 1992, when Garner, with use of a tractor and other equipment, destroyed them.

■ The right of Garner to visit the cemetery must be balanced against the right of Fish & Wildlife to maintain reasonable security and prevent vandalism in the area because this case arises from a declaration of rights resulting from the granting of a permanent injunction.

■ This Court recognizes the unquestioned right of Garner to visit the grave of a relative. *See* 14 Am.Jur.2d 697 § 36 *Ceme-*

*teries.* Under Kentucky law, the right of a relative to visit the graves of deceased relatives has been classified as an easement. *Haas v. Gahlinger,* Ky., 248 S.W.2d 349 (1952). The right of ingress and egress may be protected by an equity court. *See Rose v. Rose,* 314 Ky. 761, 237 S.W.2d 80 (1951). Whether the right of an heir to visit is considered an easement, license or privilege, it cannot be extinguished by the subservient fee owner through conveyance to another. *Cf. Johnson v. Kentucky–Virginia Stone Co.,* 286 Ky. 1, 149 S.W.2d 496 (1941).

*Ground v. Harmon,* Ky., 291 S.W.2d 529 (1956), involved access to a family cemetery by more than one road. The court held that the defendant had access to the cemetery by means of a roadway that had been established by long usage, and there was no reason to grant him a right to ingress and egress over the plaintiff's land from the nearest road. *Ground, supra,* supports the position that the right to visit a family burial plot must be exercised reasonably. We are persuaded that *Hines v. State,* 126 Tenn. 1, 149 S.W. 1058 (1911), provides a comprehensive description of the situation where relatives are granted the right of ingress and egress from the nearest public road with the right being exercised at reasonable times in a reasonable manner. *See Mingledorff v. Crum,* 388 So.2d 632 (Fla.App.1980).

■ The right of ingress and egress to a cemetery is to be used for a proper occasion and proper purposes. *Hutchinson v. Akin,* 5 Ky.Op. 373 (1871). The right of ingress and egress and its dimension is not unqualified. *Rose, supra,* held that the relatives had a right to use the graveyard for a proper purpose. We believe *Stewart v. Compton,* Ky. App., 549 S.W.2d 832 (1977) has been misinterpreted and misapplied in this situation. *Stewart, supra,* held that persons visiting a private cemetery should be able to do so at their own convenience and that to require them to resort to the use of keys would be unreasonable. The Court of Appeals distinguished the facts of *Stewart* from *Wharton v. Cole,* Ky., 453 S.W.2d 741 (1970), partly on the basis that the number of persons requiring keys could be readily ascertainable and that gate access could be quickly established.

In *Stewart,* there was only one access road across which a gate was locked at all times, whereas in this case, there are three access roads and gates across them are not locked at all times, but for only six months of each year.

We must note that Fish & Wildlife has indicated in this proceeding that it will provide keys to Garner and his immediate family for the purpose of visitation and that the gates will remain open for six months of each year. Consequently, we believe little or no inconvenience would result from such an arrangement as distinguished from *Stewart.* Such a situation must be respected by both parties with the understanding that Garner and his family members may have absolutely free access to the cemetery area so long as they do not engage in any kind of vandalism or other inappropriate behavior. Fish & Wildlife and its agents and employees must not harass or make any access to the cemetery materially inconvenient. Acts of vandalism or misconduct by anyone are not immune from appropriate legal prosecution and punishment.

■ It must be understood that an easement or any other right of access for ingress or egress to a private cemetery is still governed by the common law principles of easements. The cemetery cases involving easements must be factually scrutinized very carefully and generally must be decided on a case-by-case basis. Common law principles of easements must be considered along with principles related to cemetery easement cases. The relatives have a right to visit the grave site of their ancestors. In this case, the Department of Fish & Wildlife has a duty, pursuant to KRS 150.015, to protect the area from vandalism and vehicular damage. The construction and maintenance of gates on certain roads is not beyond the recognized police power of Fish & Wildlife so long as it is conducted in a manner consistent with allowing reasonable access to the cemetery. The owners of the easement and the servient estate have correlative rights and duties which neither may unreasonably exercise to the injury of the other. *Higdon v. Kentucky Gas Transmission Corp.,* Ky., 448 S.W.2d 655 (1969). The use of an easement

must be reasonable and as little burdensome to the landowner as the nature and purpose of the easement will permit. *Horky v. Kentucky Utilities Co.*, Ky., 336 S.W.2d 588 (1960). *Cf. Farmer v. Kentucky Utilities Co.*, Ky., 642 S.W.2d 579 (1982). The nature and extent of an easement must be determined in light of its purposes. *Thomas v. Holmes*, 306 Ky. 632, 208 S.W.2d 969 (1948).

The parties to this dispute must be reasonable in their actions and cannot unreasonably intrude on the rights of the other. The servient landowner and its licensee have rights and the easement to visit the cemetery does not entitle the user thereof to exclusive control of the land, but only to the extent necessary to enable it to exercise its rights. *Kentucky Central Natural Gas Co. v. Huls*, Ky., 241 S.W.2d 986 (1951). Easements may not be enlarged on or extended so as to increase the burden on or interfere with the servient estate. *City of Williamstown v. Ruby*, Ky., 336 S.W.2d 544 (1960). The existing precedent in Kentucky indicates that the mere construction of gates by the servient estate does not violate the dominant estate owner's easement rights. *Herndon v. McKinley*, Ky.App., 586 S.W.2d 294 (1979). The manner of the creation of passways is one factor bearing upon the right to erection of one or more gates. For other cases involving non-cemetery case matters which hold that the erection or construction of gates may be necessary to protect the appropriate use and enjoyment of the subservient owner, see *Mann v. Phelps*, 269 Ky. 493, 107 S.W.2d 288 (1937) and *Jenkins v. Depoyster*, 299 Ky. 500, 186 S.W.2d 14 (1945). There is no reason to believe that the servient owner forfeits his right to protect the land he owns simply because it is crossed by a passway. However, the owner cannot unreasonably interfere with the rights of the holder of the easement. *See also Ball v. Moore*, 301 Ky. 779, 193 S.W.2d 425 (1946); *Smith v. Price*, 312 Ky. 474, 227 S.W.2d 981 (1950).

The United States of America is not an indispensable party, as contemplated by CR 19.01, to this specific action.

*West v. Goldstein*, Ky., 830 S.W.2d 379 (1992), provides guidance for the interpretation of CR 19.01. The decision as to necessary or indispensable parties rests within the sound authority of the trial judge in order to effectuate the objectives of the rule. The exercise of discretion by the trial judge should be on a case-by-case basis rather than on arbitrary considerations and such a decision should not be reversed unless it is clearly erroneous or affects the substantial rights of the parties. *West, supra.*

The testimony in this case indicates that the United States has never objected to or interfered with the right of Garner to visit the cemetery. Possession and control of the area have been delegated to Fish & Wildlife for a term of 25 years. Garner's only concern is access to the cemetery while the servient estate is in the possession and control of the Fish & Wildlife Department. The Court of Appeals has correctly held that whether the right of an heir to visit the cemetery is considered an easement, license or privilege, it cannot be extinguished by the owner of the fee simple through conveyance to another. *See Johnson v. Kentucky–Virginia Stone Co., supra.* Accordingly, the right of access Garner possesses was in existence when the United States took title subject to it. The trial judge and the Court of Appeals determined that Garner's right of access does not amount to the establishment of an easement against the United States.

The decision of the trial judge should be reversed only if such a conclusion was clearly erroneous. *West.* Fish & Wildlife has not sustained the burden of showing that the judgment of the trial court was clearly erroneous in regard to this aspect of this case.

We are not convinced that KRS 418.075, the declaratory judgment act, requires that the United States of America be made a party to this particular suit. The statute also notes that no declaration shall prejudice the rights of persons not parties to the proceedings. Accordingly, this judgment has no application on the rights of the United States because it was not a party pursuant to the statute. The absence of the United States or the failure to make the United States a party makes the decision inconclusive as to them. *De Charette v. St. Matthews Bank & Trust Co.*, 214 Ky. 400, 283 S.W. 410 (1926); *Eitel v. John N. Norton Memorial Infirmary*, Ky., 441 S.W.2d 438 (1969), held that it was not proper to attempt a declara-

tion of rights where certain parties were not included in the suit and that portion of the judgment was stricken. *Eitel, supra,* also stated that the part of the judgment stricken was without prejudice to securing the relief sought when the proper parties were before the court.

The trial court and the Court of Appeals have not expanded the rights of Garner in the absence of the landowner being present in the suit or against the interests of the landowner. The United States and Garner still have the same relative interest as they did before the United States acquired the property. Garner has the right of access to the cemetery and the United States has not disputed that right of access at any point. Therefore, we conclude that the decision does not affect the substantial rights of the United States and that the decision of the trial court was not clearly erroneous.

The holding of this Court is that the decision of the Court of Appeals and the judgment of the trial court are reversed insofar as the Fish & Wildlife Commission shall be allowed to maintain locked gates on the Lake Cumberland Wildlife Management area at certain times of the year so long as Garner and his heirs are furnished with a key so that he and his heirs may have free access to the cemetery at any time. We further hold that the United States of America is not an indispensable party to this action as contemplated by CR 19.01 because the declaratory relief will not prejudice the rights of the United States.

The decision of the Court of Appeals is reversed in part and affirmed in part and this matter is remanded to the circuit court so as to allow the Fish & Wildlife Department to maintain locked gates at certain times of the year so long as Garner and his heirs are furnished with a key so that he may have free access to the cemetery at all times.

STEPHENS, C.J., LEIBSON, SPAIN and STUMBO, JJ., and LARRY D. NOE, Special Justice, concur.

REYNOLDS, J., concurs in result only.