VENTERS, J.,
DISSENTING;
I ■ respectfully dissent. Despite the county’s effort to obscure the facts about its lack of ownership of the land upon which it is about to buüd a new concrete bridge, one. glance at the exhibit containing the satellite view photo of the area exposes the truth. The location of the new bridge and the re-routed roadway deviates grossly from the path of Jones Creek Road’s 30-foot right-of-way. It detours widely off the current roadbed and well into the land owned by Hedgespeth. The county’s ownership of the existing Jones Creek Road is totally immaterial because the new bridge is not being placed upon the existing right-of-way.
It is conceded by all that the location of the new bridge is included within Hedges-peth’s deed and that Taylor County has neither deed, nor legal title, nor even col-orable title, to the ground underlying the new bridge and the rerouted highway. In its best case scenario, the county has evidence that in recent years some vehicles travelling the Jones Creek Road choose to avoid the sharp curve in the road at the site of the- current bridge by dropping away from the existing roadway and driving directly through the shallow creek over the land owned by Hedgespeth. The county has presented no evidence at all to show that this burden over Hedgespeth’s land has been of sufficient character and quality, and of sufficient duration, to establish a permanent public right-of-way, much less to vest the Taylor County government with the authority to build a concrete bridge and roadway over it.[1] “Easements are not favored and the party claiming the right to an easement bears the burden of establishing all the requirements for recognizing the easement.” Carroll v. Meredith, 59 S.W.3d 484, 489-490 (Ky.App.2001); Cary v. Pulaski County Fiscal Court, 420 S.W.3d 500, 509 (Ky.App.2013).
Moreover, even if the county had acquired a legally-enforceable easement over the affected area of Hedgespeth’s land, it still faces the well-established rule that “easements may not be enlarged on or extended so as to increase the burden on or interfere with the servient estate.” Department of Fish & Wildlife Resources v. Garner, 896 S.W.2d 10, 14 (Ky.1995). Paving a 30-foot roadway and building a concrete bridge where none previously existed *147 indisputably increases the burden upon the servient estate.
Since the drafting of Magna Carta over 800 years ago and the institution of the Anglo-American rule of law tradition, it is fundamental that the government is restrained by the law and that our Constitutions were written to constrain the authority of government. Section 13 of the Kentucky Constitution forbids the government from taking anyone’s property for public use “without the consent of his representatives and without just compensation being previously made.” (Emphasis added.) I emphasize the mandate for compensation to the property owner before the taking. Justice Cunningham recently said in the context of Fourth Amendment liberty: “A citizen’s greatest fortification against government intrusion into his or her home is the Fourth Amendment itself, not a lock.”[2] Justice Cunningham eloquently captured the principle that should prevail here with respect to Section 13. No power of government is stronger than our written Constitution because we hold that the government is required to obey the law. Our faith is in the written law and nothing more than the written law should be required to protect one’s rights.
In 1976, our legislature, enacted the Kentucky Eminent Domain Act, KRS 416.540 to 416.680, providing clear and simple procedures for county officials to follow when they need to legally acquire a right-of-way for highway improvements and other public works. None of those procedures have been followed here. The unassailable evidence shows that Taylor County lacks legal title to the land it seeks to occupy with a concrete bridge. At best, it produced only sketchy evidence^ of a prescriptive easement claim. We should not turn a blind eye toward the county’s “shoot first and ask questions later” approach. • Our acknowledgment that Hed-gespeth can bring reverse-condemnation action is a poor substitute for injunctive relief compelling the county to follow the law.
Every county official involved in this project took the oath to support the Constitution of Kentucky, and that oath did not exclude Section 13. The same officials also swore to “faithfully execute” their respective offices “according to law,” and that law includes the Eminent Domain Act of Kentucky. In Boone Creek Properties, LLC v. Lexington-Fayette Urban County Board of Adjustment, 442 S.W.3d 36 (Ky.2014) we held that a local government seeking to immediately and temporarily enjoin a violation of its laws need not demonstrate the specific immediate and irreparable injury it would suffer. Immediate relief was available because the irre-parability of the harm arising from a government’s inability to enforce its laws was implied. We recognized that:
For a representative government that draws its authority from the respect, good ‘will, and consent of the people, rather than by the force of its armed police and military, the ability to promptly eliminate ongoing violations of laws enacted by the people’s representa-fives is essential to the ability to govern and maintain order in the community. Its inability to do so is injurious and harmful to the government and the community it serves.
442 S.W.3d at 40. I respectfully suggest that the opposite is also true. When local officials deliberately ignore statutes designed to implement the due process rights and fundamental liberties of citizens, and permanent concrete structures are about to be erected on land for which the govern *148 ment has made no compensation, immediate and irreparable injury follows. I would grant the requested injunctive relief and prohibit the anticipated permanent injury to Hedgespeth’s land until the county established its authority over the land in accordance with the statutory procedures described above.
Noble, J., joins.

. Although better suited for discussion upon another occasion, it is far from certain that a government ever acquires actual legal ownership of property simply because the property has been subject the regular and recurrent prescriptive use by local travelers over the requisite term of years.

. Milam v. Commonwealth, 483 S.W.3d 347, 351 (Ky.2015).