RENDERED:  SEPTEMBER 5, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0951-MR

WORICK LAND HOLDINGS, L.L.C.                    APPELLANT


APPEAL FROM SCOTT CIRCUIT COURT
v.          HONORABLE KATHRYN H. GABHART, JUDGE
ACTION NO. 23-CI-00660


SCOTT COUNTY RURAL LAND
MANAGEMENT BOARD, INC.                    APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  COMBS, ECKERLE, AND L. JONES, JUDGES

ECKERLE, JUDGE:  Appellant, Worick Land Holdings, L.L.C. ("Worick"),

challenges the Scott Circuit Court's Order dismissing its Complaint pursuant to

Kentucky Rules of Civil Procedure ("CR") 12.02 and 19.01, and the Kentucky

Declaratory Judgment Act ("KDJA"), Kentucky Revised Statutes ("KRS")

418.040 *et seq*.  After careful consideration, we reverse and remand for additional

proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from a Deed of Conservation Easement (the "Easement") over approximately 151.7 acres of land in Scott County, Kentucky (the "Property"). In 2011, the Joe M. Davis and Mary C. Davis Family Limited Partnership ("DFLP") conveyed the Easement to Appellee, the Scott County Rural Land Management Board, Inc. (the "Board"), in consideration for $574,000.

The Easement's conveyance names the DFLP as the "Grantor," in favor of the Board as "Grantee," and the United States, acting by and through the Department of Agriculture ("USDA"), Natural Resources Conservation Service ("NRCS"), on behalf of the Commodity Credit Corporation (collectively referred to as the "United States"), "as its interest appears herein." Trial Record ("TR"), p. 9. Notably, the United States is not named as a Grantee. Also significant is the Easement's conveyance language that the Grantee "shall have the *primary* responsibility for management and enforcement of the terms of this [Easement]," and its obligation is "subject to the rights of the United States." TR, p. 9 (emphasis added).

The conveyance's paragraphs and mutual covenants reveal the United States' "rights" under the Easement encompass the right to enforce the terms therein if certain conditions precedent occur. To be specific, the Easement provides the United States with the "same rights of enforcement as the Grantee

under this Easement." TR, p. 12. However, the subsequent sentence clarifies that the "United States will only exercise those rights of enforcement as set forth in section 7.11." TR, p. 12. Oddly, the Easement does not include any provision labeled "section 7.11." The parties' exchange of promises further elucidates the interplay between the United States' right of enforcement and the Board's status as Grantee, stating as follows: "Grantee shall act as primary steward of this Easement, *until such time* as the United States exercises its rights of enforcement, *if ever*. In the event that such rights of enforcement *are triggered*, the references [herein] to 'Grantee' shall be read to mean to the United States as well." TR, p. 12 (emphasis added).

Moving through the pertinent language in order of the Easement's numbered Sections, we commence with Section 1, which delineates the Easement's purpose as protecting the "prime, unique, [Property land] in order to preserve agricultural viability." TR, p. 12. Section 2 of the Easement describes the rights of the Grantee, including the right to protect the conservation values of the Property, to enter the Property "to monitor compliance with and otherwise enforce the terms of this Easement in accordance with Section 7; . . . [and] to prevent . . . use of the Protected Property that is inconsistent with the [p]urpose of this Easement . . . by exercise of the remedies set forth in Section 7." TR, p. 13.

Turning to Section 3 of the Easement, the Grantor's affirmative obligations include, *inter alia*, compliance with the terms of the Easement and any conservation plans as formulated by the NRCS. If the Grantor does not comply with its affirmative obligations under the conservation plan, "the NRCS will inform the Grantee of the Grantor's noncompliance. The Grantee shall take all reasonable steps (including efforts at securing voluntary compliance and, if necessary, appropriate legal action) to secure compliance with the conservation plan . . . ." TR, p. 13.

Section 4 of the Easement contains a list of "Prohibited Uses" of the Property. Central to the appeal before us is Subsection 4(j), which states "Subdivision of the Protected Property is prohibited." TR, p. 16. The Easement does not define the term "subdivision." Equally relevant is Section 6, titled "Enforcement/Management," and states that the Grantee is charged with investigating violations of the Easement, informing the NRCS of the same, and taking "appropriate enforcement action." TR, p. 20. Section 6 provides that *if* the Grantee fails to resolve violations of the Easement within 60 days from discovery it "may result in enforcement of the terms of the Easement by the United States." TR, p. 21.

Section 5 of the Easement, titled "Permitted Uses," delineates a list of allowable activities and uses of the Property. TR, p. 17. Section 6 describes the

initial baseline report and the responsibilities of the Grantee to ensure that the Property is maintained in accordance with the report. Subsection (a) states that the Grantee shall provide annual monitoring of the report and must resolve any violation within 60 days of discovery. "Failure to cure the violation *may* result in enforcement of the terms of the Easement by the United States." TR, p. 21 (emphasis added).

While mentioned in relation to the United States' enforcement rights, Section 7, is titled "Notice and Approval," and details the notice and approval requirements for permitted activities on the Property as designated in Section 5. TR, p. 21-22. Section 7 does not refer to the United States or any of its agencies. As mentioned above, there is no section labeled "section 7.11."

Moving on to Section 8 of the Easement, should the Grantee find "that a violation of the terms of the Easement has occurred or is threatened, Grantee shall give written notice to Grantor of such violation and demand corrective action . . . ." TR, p. 22. If corrective action is not taken, the Grantee may seek relief in equity or in law. In the event the parties fail to fulfill their duties under the Easement, Section 8.10 provides the Scott County Fiscal Court (the "Fiscal Court") with the mandatory duty to bring suit to enforce the terms of the Easement against the Grantor or the Grantee.

Progressing to a critical section of the Easement, we turn to Section 10, titled "General or Standard Provisions." In Section 10.13, titled "Right of Enforcement," the Easement grants the United States a right of enforcement as follows: "Under this Easement, the United States is granted the rights of enforcement in order to protect the public investment. The Secretary of [the USDA] . . . *may* exercise this right of enforcement . . . *if* the Grantee, or the [Fiscal Court], fail to enforce any of the terms of this Easement, as determined in the sole discretion of the [USDA] Secretary." TR, p. 27 (emphasis added). Next, Section 10.14, permits the transfer or assignment of the Property subject to the Easement, which runs with the Property in perpetuity.

With the limited exception of Sections 13.2 and 18.1, the remaining provisions of the Easement are not relevant to our review. Section 13.2 names the Fiscal Court as the "Backup Grantee." TR, p. 31. Section 18.1 of the Easement provides that the "interpretation and performance of this Easement shall be governed by the law of the Commonwealth of Kentucky." TR, p. 32.

A plain reading of the Easement indicates that the United States has a right to enforce the terms of the Easement if, and only if, the right of enforcement is "triggered." The triggering event derives from the Grantee's failure to fulfill its primary duty to enforce the terms of the Easement. Relating to the subdivision restriction, if the Grantee (or Fiscal Court) fails to enforce the Easement terms, the

-6-

United States may elect to assert its enforcement rights. Thus, the right is not automatic and is contingent on the USDA Secretary's determination that the Grantee has failed to enforce the Easement restrictions.

With these relevant Easement provisions in mind, we turn to the facts alleged in Worick's Complaint, which is the operative pleading for purposes of this Court's review. In 2019, Worick purchased the Property from DFLP in fee simple. Worick acknowledges that it is bound by the terms of Easement as the successor "Grantor." Accordingly, Worick has an affirmative obligation to comply with the terms of the Easement, including selling or transferring the Property in a manner consistent with the subdivision prohibition contained within Section 4(j).

In March of 2021, Worick desired to sell one of the servient parcels and notified the United States of its intention. In response, the United States informed Worick that selling individual parcels violated Section 4(j) of the Easement's subdivision restriction. On October 31, 2022, Worick, with the assistance of counsel, provided the Board and the United States with written notice of its intent to sell one or more servient parcels to one or more buyers no earlier than 30 days from the date of notice. The Scott County Attorney, Cameron Culbertson, informed Worick, by letter dated November 23, 2022, that the Board and the Fiscal Court oppose any sale of individual parcels to one or more buyers as such action constitutes an impermissible subdivision of the Property.

Worick alleges that under the governing laws of this Commonwealth, the sale of any one of the servient parcels is not a subdivision of the property because the parcels existed individually prior to the creation of the Easement, the parcels will remain subject to the Easement upon any sale or transfer, and such transaction will not frustrate or impair the purpose of the Easement.

The jurisprudential development of this appeal began in February of 2023 when Worick filed suit in the Federal District Court seeking a declaratory judgment that the potential sale(s) of individual servient parcels to one or more purchasers does not violate Section 4(j) of the Easement.[1] Worick named the Board and the United States as party defendants.

In June of 2023, upon the Board and the United States' joint motion, the Federal District Court dismissed Worick's complaint without prejudice on the basis that it lacked subject matter jurisdiction. That Court concluded that the Federal Quiet Title Act, 28 United States Code ("U.S.C.") § 2409a, did not permit declaratory relief in the form of construing the language of an easement because the cause of action does not concern title to property.

In September of 2023, Worick filed a nearly-identical, declaratory action in the Scott Circuit Court pursuant to the KDJA, again naming the Board

---

[1] *Worick Land Holdings, L.L.C. v. Scott Cnty. Rural Land Mgmt. Bd., Inc.*, United States District Court, Eastern District of Kentucky, Case No. 5:23-cv-49-DCR.

and the United States as party defendants.[2]  Worick pointed out that the United States has "tertiary rights to enforce the terms of the [Easement] if and to the extent others fail to do so and, thus, [is] being included as [a party defendant] for notice purposes."  TR, p. 82.  The United States summarily filed a notice of removal to Federal Court pursuant to 28 U.S.C. § 1442(a)(1).  Worick, expecting the Federal District Court to dismiss the action once again on jurisdictional grounds, voluntarily dismissed its complaint.

On September 8, 2023, Worick pursued declaratory relief for a third time, filing the underlying Complaint in the Scott Circuit Court.  Worick's Complaint is substantively the same as its prior two complaints.  However, in this third Complaint, Worick only named the Board as party defendant.  The allegations of Worick's Complaint clarified that the Board is the sole Grantee under the Easement, has taken action to enforce Section 4(j) of the Easement, and is therefore the only party with the present right of enforcement.  Worick also attached and incorporated by reference the Easement and the correspondence discussed *supra.*

On October 6, 2023, citing CR 12.02, the Board filed a Motion to Dismiss Worick's Complaint due to its failure to name the United States as a party

---

[2] *Worick Land Holdings, L.L.C. v. Scott Cnty. Rural Land Mgmt. Bd., Inc.*, Scott Circuit Court, Civil Action No. 23-CI-00567.

defendant pursuant to CR 19 and the KDJA. The crux of the Board's argument was that the United States is a necessary party based on its right to enforce the terms of the Easement. In response, Worick argued that neither CR 19.01 nor the KDJA renders the United States as a "necessary" or "interested" party to the action because the United States is not a Grantee and has taken no steps to perfect its right of enforcement. Considering the Board's affirmative opposition to Worick's proposed sale of individual parcels of the Property to one or more buyers, Worick argued that the United States is without a present enforcement interest to assert. Worick also contended that even if the United States qualified as a necessary party, dismissal is unwarranted because the United States does not qualify as an indispensable party pursuant to CR 19.02.

On June 18, 2024, following written and oral arguments on the Board's motion, the Trial Court dismissed Worick's Complaint without prejudice. The Trial Court's five-page Order recited the relevant facts, standard of review, applicable law, and provided a one-paragraph application of the law to the facts. The Trial Court's analysis is as follows: "Plaintiff acknowledged [the United States'] interest by naming [the United States] in [Worick's] first two lawsuits. [The United States is a] part[y] to the Easement and ha[s] final authority to enforce it even if the [Board] does not. [The United States'] omission requires dismissal of the complaint." TR, p. 237. Worick appeals from this Order.

-10-

## STANDARD OF REVIEW

CR 12.02(g) permits a defendant to request dismissal of an action for "failure to join a party under Rule 19." The KDJA also requires dismissal for failure to join necessary parties who are described as those who have an interest that will be affected by the requested declaratory relief. *See* KRS 418.075. Under both CR 19 and the KDJA, dismissal for non-joinder is subject to an abuse of discretion standard of review. *See Commonwealth, Dep't of Fish & Wildlife Resources v. Garner*, 896 S.W.2d 10, 14 (Ky. 1995) (applying an abuse of discretion standard when reviewing joinder under CR 19 and the KDJA); *Sherrard v. Jefferson Cnty. Bd. Of Educ.*, 171 S.W.2d 963, 965 (Ky. 1942) (in an appeal concerning non-joinder in an action for declaratory judgment, the Court stated that "[d]eclining to declare the rights was within the discretion of the circuit court").

An abuse of discretion occurs when "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). As applied to the issue of joinder, an abuse of discretion occurs where the order on appeal "is clearly erroneous [or] affects the substantial rights of the parties." *West v. Goldstein*, 830 S.W.2d 379, 385 (Ky. 1992). In deciding whether findings are clearly erroneous, we endeavor to determine if they are without adequate evidentiary support or occasioned by erroneous application of the law. *See Rogers v. Lexington-Fayette*

*Urban Cnty. Gov't*, 175 S.W.3d 569, 571 (Ky. 2005) (citation omitted). The issues presented in this appeal do not involve issues of fact, but only the application of law. We also underscore that a Trial Court should utilize its discretion in a manner consistent with effectuating the goals of the rule. *See Garner*, 896 S.W.2d at 14 ("The decision as to necessary or indispensable parties rests within the sound authority of the trial judge in order to effectuate the objectives of the rule.").

ANALYSIS

The KDJA, CR 19.01, and CR 19.02 comprise the legal framework within which we conduct our review. The Order on appeal does not distinguish between the KDJA and CR 19.01, and it fails to mention CR 19.02 in any respect. Nonetheless, we will review the KDJA and CR 19 in turn.

To begin, the KDJA, specifically KRS 418.075, titled in part, "Necessary parties," requires that "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." As applied to the appeal *sub judice*, Worick is mandated to name any party that has an interest that will be affected by the requested judicial declaration. *See Commonwealth ex rel. Meredith v. Reeves*, 157 S.W.2d 751, 753 (Ky. 1941) (stating that naming necessary parties in a declaratory judgment action is mandatory).

-12-

Similarly, CR 19.01, titled "Persons to be joined if feasible[,]" provides as follows:

> A person who is subject to service of process, either personal or constructive, shall be joined as a party in the action if (a) in his absence complete relief cannot be accorded among those already parties, or (b) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

When joinder under CR 19.01 is not feasible, we must determine if dismissal is warranted under CR 19.02, which states, in part, the following:

> If a person as described in Rule 19.01 cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispens[a]ble.

CR 19.01 and 19.02 are virtually identical to Rule 19 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See Jones by and through Jones v. IC Bus, L.L.C.*, 626 S.W.3d 661, 670 (Ky. App. 2020) ("The only significant difference between the two concerns federal jurisdiction."). As a result, this Court regards "cases analyzing the federal rule [as] highly relevant in determining the proper interpretation and application [of CR 19] . . . ." *Id.* This Court has further adopted the three-step analysis espoused by the Sixth Circuit Court of Appeals in *American*

-13-

*Express Travel Related Services, Co., Inc. v. Bank One-Dearborn, N.A*, 195 F.

App'x 458, 460 (6th Cir. 2006). *Jones*, 626 S.W.3d at 671. To summarize

broadly, a moving party must demonstrate the following to obtain dismissal based

on non-joinder of an absent party pursuant to CR 19.01 and 19.02: (1) the absent

party is necessary to the action pursuant to CR 19.01; (2) the Trial Court cannot

feasibly join the necessary party under CR 19.01 because the party is not subject to

service of process; and (3) the necessary party is indispensable to the action so as

prevent the case from proceeding in the party's absence pursuant to CR 19.02.

For the sake of clarity, we refer to the first inquiry as determining

whether the party is necessary to the action under CR 19.01; and, if so, the third

inquiry evaluates if the absent party is indispensable requiring dismissal under CR

19.02. *See Baker v. Weinberg*, 266 S.W.3d 827, 832 (Ky. App. 2008) ("[U]nder

CR 19.01, a necessary party is a party who should be joined in an action, and

under CR 19.02, an indispensable party is a party who must be joined in an action,

and in such party's absence, the action may be dismissed."). Thus, "necessary"

and "indispensable" are distinct terms with different meanings, and they are not

interchangeable.

On a more granular level, the necessary party analysis considers two

broad categories promulgated in CR 19.01(a) and (b). Under CR 19.01(a), a

necessary party is a party whose absence prevents a Court from providing the

-14-

already-named parties with complete relief. Under CR 19.01(b), the absent, unnamed party is a necessary party if he has an interest in the action and adjudication of the action will either (i) hinder his ability to protect that interest or (ii) subject the already-named parties to inconsistent obligations due to that interest. If the absent party is necessary, the Trial Court's second step is to join the party if feasible pursuant to CR 19.01. Unlike its federal counterpart, CR 19.01 makes clear that feasibility is only dependent on whether the party is subject to service of process. *Cf.* Fed. R. Civ. P. 19(a)(1) ("A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined . . . .").

If the absent, necessary party cannot be joined, a Court must proceed to the third inquiry delineated in CR 19.02, which considers, "in equity and good conscience[,]" whether the necessary party is indispensable to the action, thereby requiring dismissal. CR 19.02 provides four factors for a Court's consideration when determining whether equity requires dismissal. The indispensability analysis guides the Trial Court to weigh pragmatic and equitable factors considering whether the case can proceed in the absence of the non-joined party. *Id.*; *Liquor Outlet, L.L.C. v. Alcoholic Beverage Control Board*, 141 S.W.3d 378, 387 (Ky. App. 2004) (citations omitted).

I.    KDJA

The language of the KDJA demonstrates an overarching objective, which is undoubtably harmonious with the equitable principle "that no Court can adjudicate directly upon a person's right, without the party being either actually or [constructively] before the court." *Mallow v. Hinde*, 25 U.S. 193, 198 (1827). While similar to CR 19, our authoritative case law has referred to the KDJA as "provid[ing] an additional basis for dismissal for failure to join indispensable parties." *Gilland v. Dougherty*, 500 S.W.3d 217, 223 (Ky. 2016). Indeed, our Supreme Court has reviewed dismissal pursuant to the KDJA separately from CR 19.01 and 19.02. *See Garner*, 896 S.W.2d at 14-15. Therefore, despite the overlapping language and considerations at play, it is incumbent upon this Court to evaluate dismissal for non-joinder under the KDJA separately from CR 19.

To determine whether the KDJA necessitates dismissal, we first identify the United States' interest and if Worick's requested judicial declaration affects said interest. The Trial Court's Order provided limited analysis and simply supplied two legal conclusions supporting dismissal due to Worick's failure to name the United States as a party defendant. First, the Trial Court relied on *Adamson v. Adamson*, 635 S.W.3d 72 (Ky. 2021), for the proposition that "in real estate controversies, 'all persons who are interested under the title are necessary parties.'" TR, p. 246. Second, the Trial Court found that Worick's naming of the

-16-

United States in its preceding two lawsuits sufficiently demonstrates the United States' interest and requires dismissal.

Regarding *Adamson*, the Trial Court did not accurately quote the proposition upon which it relied. The correct quotation is as follows: "Because of our ruling on the Statute of Frauds this issue is not controlling upon us, but we would remind the lower courts that in 'controversies *concerning title to real estate* all of the persons who are interested under the title in litigation are necessary parties.'" *Id.* at 81 (emphasis added) (quoting *Lunsford v. Witt*, 309 S.W.2d 348, 349 (Ky. 1958)).

Notwithstanding the language in the quotation, *Adamson* is inapposite to the issue because the Kentucky Supreme Court decided the appeal on other grounds and did not apply the KDJA (or CR 19, for that matter). Moreover, the *Adamson* Court was confronted with title to property. Here, however, Worick seeks the interpretation of a negative restriction on the Easement. Thus, the Trial Court's reliance on incorrect language in a distinguishable case is misplaced and not supported by sound legal principles. *Cf. Gilland*, 500 S.W.3d 217 (dismissal required where record landowners subject to quiet title action were not made parties to the action even though surrounding landowners were included).

Furthermore, even if we accept the Trial Court's implicit ruling that a contingent right to enforce a negative easement of which the party is not a grantee

qualifies as an "interest" under *Adamson*, the Trial Court did not provide any law or reasoning to support the conclusion that such an interest is also affected by the requested judicial declaration. The same holds true with respect to the Trial Court's finding that Worick's naming of the United States in its prior two lawsuits equates to an admission of the United States' interest. While the Trial Court's conclusion regarding the existence of an interest may be true, it simply failed to address the critical inquiry as to whether the United States' interest is affected by the requested declaratory judgment. *See* KRS 418.075 ("[A]ll persons shall be made parties who have or claim any interest *which would be affected* by the declaration . . . .") (emphasis added).

Despite these salient errors, we must still evaluate whether affirmance of the Trial Court's dismissal is nevertheless appropriate. Focusing first on the requested declaration, Worick is not seeking to quiet title, and it is not petitioning for a declaration regarding *any* party's right to enforce the terms of the Easement. Worick is requesting a judicial declaration interpreting an Easement restriction. Particularly, Worick seeks a judicial determination regarding whether "the sale or transfer . . . of the Subservient Parcels [that] remain subject to the Deed of Easement" qualifies as a subdivision. TR, p. 6. This Court has not observed any explanation or example illustrating how a judicial declaration interpreting the term

-18-

"subdivision" under Kentucky law affects the United States' enforcement right under the Easement – a right that has not even been triggered.

The Easement expressly provides the Board with "the primary responsibility for management and enforcement," subject to the United States' right of enforcement. TR, p. 9. The United States' right to enforce the Easement occurs only "*if* the [Board], or Scott County Fiscal Court, fail [sic] to enforce any of the terms of this Easement, as determined in the sole discretion of the Secretary." TR, p. 27 (emphasis added). As such, the United States has a right of enforcement contingent on the Board or Fiscal Court first failing to prohibit Worick from conveying the property in violation of the subdivision restriction. Whether the United States desires to oppose in litigation a judicial declaration on the merits of the term "subdivision" or challenge a subsequent sale of individual parcels is certainly within the USDA Secretary's discretion. Yet, we have seen no allegations that the United States is seeking or will seek to possess a present, primary right of enforcement. As the allegations stand to date, the Board remains the sole Grantee, with the lone right of enforcement.

The Board argues that nothing in the Easement precludes the United States from enforcing the Easement "under other circumstances." Appellee Brief, p. 6. The Board does not elucidate as to these "other circumstances." Instead, the Board cites *Perry v. Perry*, 143 S.W.3d 632, 633 (Ky. App. 2004), to support its

-19-

contention that this Court "cannot read words into the contract which it does not contain." In *Perry*, a predecessor panel of this Court interpreted a marital dissolution settlement agreement to determine the valuation date of pension benefits. 143 S.W.3d at 633. The *Perry* opinion has no bearing on the appeal before us; rather, *Perry* restates well-established legal tenets of contract interpretation, which we apply to all issues concerning the same. *Id.* (quoting *Goff v. Blackburn*, 299 S.W. 164, 165 (Ky. 1927)).

Again, as it relates to the appeal before this Court, the Easement is clear that the Board holds the "primary" duty to enforce the Easement, and the United States has the right to enforce the Easement upon the fulfillment of specific contingencies. While those contingencies are discretionary on the part of the United States, it does not negate the Easement's clear language that its right of enforcement does not convert to a present right of enforcement unless, and until, the Secretary of the USDA determines that the Board or the Fiscal Court failed to enforce the terms of the Easement. There is no legitimate argument that our conclusion is reading "words into the [Easement] which it does not contain."

Further, while no party has pointed to this fact, the Easement does not reveal a specific process or standard governing the USDA Secretary's determination. Nonetheless, absent allegations or assertions that the United States has met the conditions requisite to enforce the Easement presently – *e.g.*, the Board

has failed to enforce the Easement, and the USDA Secretary has decided the United States must step in to enforce the Easement – we cannot speculate as to the actions of the USDA Secretary. Our review is confined to the allegations of the Complaint and the attachments thereto.

In sum, we recognize the United States' interest in enforcing the terms of the Easement. However, the Trial Court and the Board fail to articulate the reasons or manner by which Worick's requested judicial declaration would affect the United States' enforcement rights in light of the relevant Easement language and in the context of the Easement as a whole. Absent a showing that the United States' interest will be affected by judicial declaration, dismissal for non-joinder under the KDJA is not appropriate. Our holding is bolstered by the fact that the United States' enforcement right is contingent, and it has not taken action to render said right to make it presently enforceable despite having notice of Worick's intent to sell.

This Court is cognizant of the lack of precedential authority on the issue. We find Worick's submission of *Garner*, 896 S.W.2d 10, as persuasive support for our holding. In that case, Garner obtained declaratory relief and a permanent injunction preventing the Kentucky Department of Fish & Wildlife Resources (the "Department") from erecting and maintaining a locked gate to a cemetery where his relatives are buried. *Id.* at 12. The cemetery is located on

property within Lake Cumberland and owned by the United States in fee simple. *Id.* at 12. The United States provided the Department with a license to manage the fish and wildlife thereon. *Id.* On appeal, the Department challenged Garner's failure to include the United States as a necessary party under CR 19 and the KDJA. *Id.* The Kentucky Supreme Court held that Garner enjoyed an easement to visit the cemetery by operation of law. *Id.* The Kentucky Supreme Court also held that the United States is not an indispensable party pursuant to CR 19 or the KDJA. *Id.* at 14. Specific to the KDJA analysis, the Kentucky Supreme Court reasoned that the United States' interest, as fee simple record owners of the property, was not affected by the declaratory relief. *Id.* Our highest Court reasoned that irrespective of Garner's requested declaration, the United States has the same interest as it always has enjoyed. *Id.* at 15.

*Garner* is by no means squarely on point. However, *Garner* demonstrates that merely having an interest or right under the easement does not mandate dismissal under the KDJA if the absent party's interest is not affected. Moreover, the United States' interest in *Garner* was arguably more affected than in the case *sub judice*, as it was the owner of the servient land in fee simple there, but not here.

In applying the principles of the KDJA and *Garner*, we find a judicial interpretation of the scope of the Easement will not affect the United States'

interest should it elect to utilize its right of enforcement.  *Cf. Reeves*, 157 S.W.2d

at 753 (parties to contracts are necessary where the contract's validity is

challenged).  At this time, the United States has not stepped in to assert

enforcement of the Easement.  To the contrary, it filed a motion in Federal Court

actively seeking (and receiving) dismissal from the litigation.  Furthermore, its

interest thusly will remain unchanged by a judicial declaration interpreting the

legal meaning of an undefined term therein.  *See West*, 830 S.W.2d 379 (absentee

beneficiaries to an action contesting a will are not necessary parties because their

interest is not affected by the outcome); *Sherrard*, 171 S.W.2d at 965 (in

declaratory judgment regarding the constitutionality of a law providing

transportation to private school pupils, the Court declined dismissal for failure to

name the State Board of Education because "an adjudication will not adversely

affect the [parties'] rights").

    As a last point on this issue, we underscore that a declaratory

judgment shall be *res judicata* between Worick and the Board.  The United States'

enforcement of the subdivision restriction before, during, or after any sale or

transfer is a matter on which we do not opine.  *See De Charette v. St. Matthews

Bank & Trust Co.*, 283 S.W. 410 (Ky. 1926).

    To conclude, in the absence of legal authority or articulated reasoning

that Worick's requested judicial declaration will affect the United States'

prospective enforcement rights, we hold that the Trial Court abused its discretion in finding the United States is a necessary party under the KDJA, and it was reversable error for the Trial Court to dismiss Worick's Complaint pursuant thereto.

   II.   CR 19.01

Having made this determination of the impropriety of the dismissal of the action under the KDJA, we briefly analyze whether the United States is a necessary party pursuant to CR 19.01. The Trial Court did not identify which portion of CR 19.01 it used to support compelling the United States' joinder. We will address both subsections (a) and (b). First, we find no tenable argument that CR 19.01(a) is implicated because a judicial declaration interpreting the term "subdivision" will provide complete relief to Worick and the Board – *i.e.*, the sale of individual parcels is either a subdivision under Kentucky law or it is not. A Trial Court is unable to provide complete relief where a "determination of the controversy" requires it as an initial matter to ascertain and settle the rights of the absentee party "before the rights of the parties to the suit can be determined." 67A C.J.S. *Parties* § 3 (2020). Here, the Trial Court is not required to settle the rights of the United States in order to interpret the meaning of the term "subdivision" within the context of the Easement and under Kentucky law.

Similarly, CR 19.01(b)(i) does not render the United States a necessary party as the requested declaration will not impair or impede the United States' prospective right of enforcement. We will not belabor this point. Instead, we refer to our analysis *supra*, which provides a detailed basis for the conclusion that the United States' interest will not be affected, let alone hampered or impaired, by a judicial declaration.

Regarding CR 19.01(b)(ii), the Board and Worick merely assert conclusory statements that a judicial declaration will (or in the case of Worick, will not) leave the parties subject to a substantial risk of incurring inconsistent obligations. Worick and the Board fail to cite to case law on this issue, including opinions from other state or federal jurisdictions. In an unpublished opinion of this Court, we addressed this element in detail, explaining that inconsistent obligations are distinguishable from inconsistent adjudications or results. *Sears v. Clark*, No. 2022-CA-0852-MR, 2023 WL 5312888, at *5-6 (Ky. App. Aug. 18, 2023). Perhaps the United States may at some point seek judicial interpretation of "subdivision." However, we have no practical description or example to evaluate substantively whether such action will expose Worick or the Board to inconsistent obligations. Given the nature of the relief Worick seeks and the lack of explanation concerning how the requested declaration would subject the parties to

inconsistent obligations, it is a misapplication of CR 19(b)(ii) to provide the United States with necessary party status under the circumstances of this case.

Additionally, we would be remiss to overlook the Board's apparent incentive to pursue joinder of the United States. Based on the history of Worick's pursuit of declaratory judgment, the Board and the United States placed Worick in a procedural quagmire. As it now stands, both federal and state Courts have dismissed this litigation, providing no forum for the dispute. This Court will not condone procedural gamesmanship. The Trial Court's discretion is not boundless and must be exercised to "effectuate the objectives of the rules." *Id.* (citations removed). This Court and the parties herein must aim for adjudication on the merits. *See West*, 830 S.W.2d 379, 384 (discussing "the long-standing policy that the Civil Rules should be construed broadly to facilitate deciding issues on their merits and to secure a just result rather than strictly or narrowly to defeat the cause of action on technical grounds").

### III. CR 19.02

Finally, having now held that the United States is not a necessary party pursuant to CR 19.01, we need not address whether the United States is an indispensable party requiring dismissal pursuant to CR 19.02.

## CONCLUSION

To conclude, we hold that the United States is not a necessary party under the KDJA or CR 19.01. For these reasons, the Scott Circuit Court's Order dismissing Worick's Complaint is reversed, and this matter is remanded for additional proceedings on the merits.

ALL CONCUR.

BRIEFS FOR APPELLANT:

J. Wesley Harned
Lexington, Kentucky

BRIEF FOR APPELLEE:

D. Barry Stilz
Lynn Sowards Zellen
Lexington, Kentucky